179 N.J. Super. 193 (1981)
431 A.2d 157
ADAM K. LEVIN, DIRECTOR, DIVISION OF CONSUMER AFFAIRS, RESPONDENT,
v.
EARL LEWIS, T/A THE RESTORATION SHOP, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 30, 1981.
Decided April 30, 1981.
*194 Before Judges MICHELS, KOLE and ARD.
*195 Frank M. Ciuffani argued the cause for appellant (Wilentz, Goldman & Spitzer, attorneys; Robert J. Cirafesi of counsel; Richard M. Brockway on the brief).
David S. Griffiths, Deputy Attorney General, argued the cause for respondent (James R. Zazzali, Attorney General, attorney; John J. Degnan, former Attorney General, and Erminie Conley, Assistant Attorney General, of counsel).
PER CURIAM.
This is an appeal from a final order issued by the Director of the Division of Consumer Affairs (Director) declaring certain conduct of appellant in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., and of the Auto Repairs Regulations promulgated thereunder, N.J.A.C. 13:45A-7.1 and 7.2.
The amended complaint charged the appellant with the following: commencement of work without a written estimate or waiver, in violation of N.J.A.C. 13:45A-7.2(a)-7.2(a)(2)-7.2(a)(3) and N.J.S.A. 56:8-1 et seq.; false promises likely to induce a customer to authorize repairs, in violation of N.J.A.C. 13:45A-7.2(a)(5); charging for work in excess of the oral estimate, in violation of N.J.A.C. 13:45A-7.2(a)(6), and failure to perform work despite payment of the agreed price, in violation of N.J.S.A. 56:8-2. After a plenary hearing the administrative law judge made the following findings:
Earl Lewis, t/a The Restoration Shop, a single proprietor, at all relevant times herein was an automotive repair dealer within the meaning of N.J.A.C. 13:45A-7.1.
In the Spring of 1978, Francois Desert brought his 1962 Thunderbird, New York registration, to Respondent's Shop.
Respondent falsely agreed at that time to perform repairs to the car's engine transmission, front and rear ends for $1,500 and to repaint it for $2,000. No written estimate was prepared by Respondent, no waiver of estimate was signed by Desert and no written authorization to perform work was signed by Desert.
In November, 1978, Desert left the car at Respondent's shop during normal working hours for repairs.
The agreed estimate was falsely confirmed at that time by Respondent's employee. No written estimate was prepared by Respondent, no waiver of *196 estimate or written authorization to perform work was signed by Desert. The false agreement induced Desert to leave the car for repairs in reliance thereon.
Desert paid Respondent $3,363.78 in reliance thereon and on account of repairs on October 27, 1978, and $600 more in response to Respondent's demand and in further reliance thereon on April 11, 1979.
Despite the agreed estimate, Respondent deceptively continued to perform services on the car and to charge therefor in excess of estimate without the oral or written consent of Desert. Final charges, though the work is unfinished, were more than double the estimate.
Contrary to his testimony, Respondent did not tell Desert before agreement was struck that the work might exceed the estimate or that Respondent worked only on a time/materials basis.
In the Fall of 1978, Thomas J. Farrell brought his 1925 Chevrolet truck engine, disassembled as he was instructed, to Respondent's shop.
Respondent, through his employee, falsely agreed at that time to overhaul, paint and reassemble the engine for $1,000. Respondent ratified the acts of his employee.
No written estimate was prepared by Respondent; no waiver of estimate or no authorization to perform work was signed by Farrell. The false agreement induced Farrell to leave the engine for repairs in reliance thereon.
Farrell paid Respondent $100 in reliance thereon and on account of repairs on January 30, 1979.
Despite the agreed estimate, Respondent deceptively worked on the engine and performed services in excess of estimate without the oral or written consent of Farrell. Final charges were double the estimate.
Contrary to testimony, Respondent or his employee did not tell Farrell before agreement was struck that the work might exceed the estimate or that Respondent worked only on a time/materials basis.
Based on the aforementioned findings, the judge ordered that Earl Lewis restore the 1962 Thunderbird for Francois Desert without further payment, thus holding appellant to the original agreement. Likewise, Lewis was ordered to return the 1925 engine to Farrell. He was further ordered to refrain from similar practices and required to pay two $2,000 penalties, the maximum permitted pursuant to N.J.S.A. 56:8-3.1. This decision was affirmed by the Director of the Division of Consumer Affairs with one modification. Lewis was ordered to pay Desert $463.78, the difference between the total cash he had given Lewis ($3,963.78) and the original price of $3,500, which he found to be the original bargain.
On appeal Lewis makes the following allegations of error:

*197 POINT I  The provisions of N.J.A.C. 13:45A-7.1, governing the practices of automobile repair dealers, are inapplicable to the respondent's business of restoring antique and classic cars;
POINT II  Respondent's conduct in this case does not constitute a violation of the Consumer Fraud Act, N.J.S.A. 56:8-2, nor of N.J.A.C. 13:45A-7.2(a)(5);
POINT III  If it is determined that provisions of N.J.A.C. 13:45A-7.1 are applicable to respondent's business it is urged that such application should be made prospective only;
POINT IV  The circumstances of this case mandate a reduction of the maximum statutory penalty imposed upon respondent.
Our study of the entire record supports the findings and conclusions of the administrative law judge whose decision was affirmed by the Director. In reaching this result, we have considered "`the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility...." Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973).
The initial question of whether N.J.A.C. 13:45A-7.1 is applicable to the business of appellant is answered in the language of the regulation. N.J.A.C. 13:45A-7.1 defines automobile repair dealer as follows:
"Automotive repair dealer" means any person who, for compensation, engages in the business of performing or employing persons who perform maintenance, diagnosis or repair services on a motor vehicle or the replacement of parts including body parts, but excluding those persons who engage in the business of repairing motor vehicles of commercial or industrial establishments or government agencies, under contract or otherwise, but only with respect to such accounts.
"Motor vehicle" means a passenger vehicle that is registered with the Division of Motor Vehicles of New Jersey or of any other comparable agency of any other jurisdiction, and all motorcycles, whether or not registered.
"Repair of motor vehicles" means all maintenance and repairs of motor vehicles performed by an automotive repair dealer but excluding changing tires, lubricating vehicles, changing oil, installing light bulbs, batteries, windshield wiper blades and other minor accessories and services. No service or accessory to be installed shall be excluded for purposes of this rule if the Director determines that performance of the service or the installation of an accessory requires mechanical expertise has given rise to a high incidence of fraud or deceptive practices, or involves a part of the vehicle essential to its safe operation.
Lewis' business clearly falls within the definition and is not the kind or type specifically excluded by the regulation.
*198 We disagree with Lewis' contention that he is not an automobile repair dealer but rather a person engaged in "the restoration and remanufacture of antique automobiles and engines, a highly unique and specialized service, the nature of which makes it impossible for him to comply with the regulations" requiring written estimations or waivers before commencing work and forbidding misleading promises. N.J.A.C. 13:45A-7.2(a)1-2. An analogous California case, confronted with the same argument, held that a businessman was not exempt from a statutory requirement of a written estimate on the theory that the work constituted restoration of a classic car rather than repairs. In Schreiber v. Kelsey, 62 Cal. App.3d Supp. 45, 133 Calif.Reporter 508 (D.Ct.App. 1976), the court reasoned as follows:
The Legislature has provided for certain specified exceptions to the requirements of this statute. Business and Professions Code section 9880.1, subdivision (f) defines "repair of motor vehicles" as follows:
"(f) `Repair of motor vehicles' means all maintenance of and repairs to motor vehicles performed by an automotive repair dealer, but excluding repairing tires, changing tires, lubricating vehicles, installing light bulbs, batteries, windshield wiper blades, and other minor accessories, cleaning, adjusting, and replacing spark plugs, replacing fan belts, oil, and air filters, and other minor services, which the director, by regulation, determines are customarily performed by gasoline service stations."
Restoration is not a stated exception to the statute. The only work specifically eliminated from the requirements of the statute is work of a minor nature and of a type ordinarily performed by gasoline service stations. Such minor repairs were apparently excluded by the Legislature, not because an estimate would be difficult to provide, but because the cost of such repairs is too low to warrant inclusion.
Further, there is no evidence that the work done by plaintiff, although labeled "restoration" in his brief, was anything other than automotive repair. Plaintiff's company name is stated on his invoice as follows: "Schreiber Motors, Foreign Car Repair and Service." In his complaint, plaintiff alleges, at page 2, lines 13-16, that: "... on or about October 1, 1973 [sic] at the request and insistance [sic] of the defendants, and each of them, the plaintiff furnished automotive parts and labor in effecting repairs to said vehicle." (Emphasis added). It is clear, therefore, that plaintiff himself, at least in the pleading of his cause of action, considered the work performed automotive repair. [at 509-510].
Applying the Schreiber analysis to the case on appeal, the fact that the regulation specifically excludes "those persons who engage in the business of repairing motor vehicles of commercial *199 or industrial establishments or government agencies, under contract or otherwise," would warrant the inference that all other automobile work was included within the regulation. N.J.A.C. 13:45A-7.1.
In the instant case the administrative law judge concluded:
... Respondent is clearly an "automotive repair dealer" within the meaning of the broadly inclusive language of N.J.A.C. 13:45A-7.1. Although the nature of his automotive repair business is specialized and limited to restoration of antique and classic cars, the broad sweep of the regulatory definition does not make or necessarily imply the exception to it that he urges be made. Restoration, in his operation, is but a specialized kind of diagnosis, repair and/or replacement or automobile engine and body parts. Though one aim of restoration is perhaps the vanity of show, the obvious end purpose of restoration is the return to automotive machine function and condition of disabled or deteriorated vehicles. Respondent has not limited his business of restoration to historic motor vehicles at least 25 years old, which if owned as collectors' items and used solely for exhibition and educational purposes by their owners may be specially so registered and licensed. See N.J.S.A. 39:3-27.3.
In affirming the determination of the administrative law judge, the Director stated:
I specifically reject Respondent's contention that he is not an automotive repair dealer as defined by N.J.A.C. 13:45A-7.1. There is no question that Respondent repairs and replaces parts of motor vehicles for compensation. His business is not limited to commercial or industrial establishments, and the two complainants herein clearly retained his services as individuals. The application of the Consumer Fraud Act and its accompanying auto repair regulation (N.J.A.C. 13:45A-7) is not limited to any narrow class of individuals.
We agree with the analysis of the law judge as affirmed by the Director. "To restore," as used in this context, is defined as "to bring back from a state of injury or decay or from a changed condition (as by repairing or retouching)." Webster's Third New International Dictionary (1971), at 1936.
Although Lewis argues that it is impossible to estimate the price of work and consequently all work in his shop must be done exclusively on a time-and-materials basis, he nonetheless gave Desert a $3,500 oral estimate for the engine work. His mechanic, Rooney, was also able to give Farrell a $1,000 estimate to overhaul his engine. Furthermore, using the language from the regulation, Earl Lewis does perform "diagnosis or repair services on a motor vehicle or the replacement of parts *200 including body parts." The fact that his work is distinguished in that the cause of repair or replacement is neither collision, use or routine maintenance, and that the purpose of the repairs is preservation or show rather than keeping the car in ordinary running condition, does not warrant exclusion from the regulation. If it is as impossible as appellant contends to give a written estimate, he should seek a written waiver.
Furthermore, it is essential to recall that the regulations are designed to deal with deceptive practices in the automobile repair business and were adopted pursuant to the authority of the Consumer Fraud Act. N.J.S.A. 56:8-1 et seq. When viewed as part of the general scheme of the act, the regulations should be liberally construed in favor of the consumer.
... The Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., was passed in response to widespread complaints about selling practices which victimized consumers. Riley v. New Rapids Carpet Center, 61 N.J. 218, 224-225 (1972). The purpose of the Act was to prevent deception, fraud or falsity, whether by acts of commission or omission, in connection with the sale and advertisement of merchandise and real estate. To accomplish the objectives of the Act, the Attorney General is empowered to promulgate such rules and regulations as might be necessary. N.J.S.A. 56:8-4. [Fenwick v. Kay American Jeep, Inc., 72 N.J. 372, 376-377 (1977)].
Accord, Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271 (1978). The Consumer Fraud Act should be construed liberally in favor of protecting consumers as well as construed to confer upon the Attorney General the broadest kind of power to act in the interest of the consumer public. State v. Hudson Furniture Co., 165 N.J. Super. 516, 520 (App.Div. 1979). Likewise, the act is not "aimed solely at the `shifty, fast talking and deceptive merchant' and does ... reach ... `a non-soliciting artisan.'" Hyland v. Zuback, 146 N.J. Super. 407, 413 (App.Div. 1976). Consequently, we are satisfied that the regulation applies to appellant's business and appellant was in violation of N.J.A.C. 13:45A-7.2(a)(2)-(3) for commencing work on the Desert and Farrell automobile and engine without a written estimate or waiver. State v. Hudson Furniture Co., supra.
*201 Appellant was also found to be in violation of N.J.A.C. 13:45A-7.2(a)(5)-(6) and N.J.S.A. 56:8-2. N.J.A.C. 13:45A-7.2(a)(5)-(6) provides that:
(a) Without limiting the prosecution of any other practices which may be unlawful under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., the following acts or omissions shall be deceptive practices in the conduct of the business of an automotive repair dealer, whether such act or omission is done by the automotive repair dealer or by any mechanic, employee, partner, officer or member of the automotive repair dealer.
........
5. Making false promises of a character likely to influence, persuade or induce a customer to authorize the repair, service or maintenance of a motor vehicle.
6. Charging the customer for work done or parts supplied in excess of any estimated price given, without the oral or written consent of the customer, which shall be obtained after it is determined that the estimated price is insufficient and before the work not estimated is done or the parts not estimated are supplied. If such consent is oral, the dealer shall make a notation on the repair order and on the invoice of the date, time, name of person authorizing the additional repairs and the telephone number called, if any, together with a specification of the additional parts and labor and the total additional cost. The dealer shall obtain the consent of any customer before any additional work not estimated is done or parts not estimated are supplied.
N.J.S.A. 56:8-2 prohibits:
... [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation ... in connection with the sale or advertisement of any merchandise....
There was adequate support in the record to uphold the violations of the Consumer Fraud Act. Desert and Farrell both testified that they were originally given firm prices for the completion of work. In Desert's case he was subsequently billed more than twice the original price and Lewis refused to set a price for the completion of work, and to date the car is incomplete. Farrell was told the engine would cost $1,000 and later, when he received notice that the engine was finished, the bill would be twice the estimated price. Note the findings of the administrative law judge.
Thus, there was adequate support for finding deceptive practices committed by appellant. Hyland v. Zuback, supra, 46 N.J. Super. at 415. See State v. Hudson Furniture Co., supra.
*202 Appellant requests that if it be determined that the provisions of N.J.A.C. 13:45A-7.1 were applicable to his business we apply the regulation prospectively.
An appellate court is empowered to confine "the effect of a decision of first impression or of novel or unexpected impact to prospective application if considerations of fairness and justice, related to reasonable surprise and prejudice to those affected, seemed to call for such treatment." Oxford Consumer Dis. Co. of N. Phila. v. Stefanelli, 104 N.J. Super. 512, 520 (App.Div. 1969), supplementing 102 N.J. Super. 549 (App.Div. 1968), aff'd 55 N.J. 489 (1970), app. dism. 400 U.S. 808, 91 S.Ct. 45, 27 L.Ed.2d 38 (1970). Courts have given cases clarifying an uncertain area of the law particularly matters of statutory construction prospective effect under circumstances where the public had previously and not unreasonably relied on a different conception of the state of the law. Id. See Darrow v. Hanover Tp., 58 N.J. 410 (1971) holding that the decision to abrogate the doctrine of interspousal immunity should be prospective based mainly on the reliance on the old rule and noting that "[p]rospectivity can avoid unsettling the past and serve as an encouragement for judicial creativity." Id. at 420.
However, we see no reason to give this court's decision regarding the interpretation of the statute prospective application. In our judgment appellant should not have reasonably assumed that his business was exempt. Rather, a more reasonable approach would have been to assume that he was included within the ambit of the regulation. Therefore, the court should give his decision the usual retroactive effect. Wangler v. Harvey, 41 N.J. 277, 287 (1963).
Finally, we find no basis to concur with appellant's allegation that the fines were excessive or unwarranted. From our review of the record we find no basis to conclude the fines illegal, arbitrary or unreasonable. See Mayflower Securities v. Bureau of Securities, supra, 64 N.J. at 93.
Affirmed.