107 N.J. 380 (1987)
526 A.2d 1069
NEW JERSEY ELECTION LAW ENFORCEMENT COMMISSION, APPELLANT,
v.
CITIZENS TO MAKE MAYOR-COUNCIL GOVERNMENT WORK, RESPONDENT.
The Supreme Court of New Jersey.
Argued November 17, 1986.
Decided June 25, 1987.
*383 Edward J. Farrell argued the cause for appellant (Farrell, Curtis Carlin & Davidson, attorneys; Edward J. Farrell and Cynthia H. Reinhard, on the brief).
Oscar N. Gaskins argued the cause for respondent.
The opinion of the Court was delivered by STEIN, J.
In this case, the New Jersey Election Law Enforcement Commission seeks to impose sanctions on respondent for its failure to comply with the provisions of the Campaign Contributions and Expenditures Reporting Act, N.J.S.A. 19:44A-1 to -44 (the Act). The Appellate Division concluded that respondent, an organization formed to collect signatures on a petition advocating a recall election, was a "political committee" under N.J.S.A. 19:44A-3i, and was therefore responsible for the timely filing of all reports required by the Act. 208 N.J. Super. 583, 586-87 (1986). Noting that the issue was one of "first impression," the court gave its ruling prospective effect only, and declined to enforce the Act's penalties against respondent. Id. at 588. Because we view this case as one in which the usual application of a statute is appropriate, we reverse in part the judgment of the Appellate Division, and remand for further proceedings in accordance with this opinion.

II
Respondent, Citizens to Make Mayor-Council Government Work (respondent or Citizens), was organized in February 1983 to collect signatures on petitions seeking the recall of the Mayor of Atlantic City. Respondent's activities ceased in December 1983, when the recall issue was certified as a ballot question. A special election was subsequently held on March *384 13, 1984, in which the residents of Atlantic City voted on the question, "Shall Michael J. Matthews Be Removed From Office By Recall?" The parties have stipulated that respondent received contributions and incurred expenditures in excess of $1,000 in connection with the recall campaign. All such monies were deposited into, and paid out of, a campaign depository account maintained in respondent's name.
On March 5, 1984, eight days before the recall election, the New Jersey Election Law Enforcement Commission (ELEC or Commission) notified Citizens by letter that it was required to file campaign finance reports detailing the activity in its account. Respondent did not file its pre-election report until May 18th, some 66 days after the election. The report disclosed contributions and expenditures for the period February 25, 1983 to December 5, 1983, as well as the balance in the account at the end of the period. Respondent has yet to file a post-election report setting forth the disposition of this balance.[1]
On July 23, 1984, ELEC filed a complaint charging Citizens with failing to file its pre-election and post-election finance reports within the time required by law. N.J.S.A. 19:44A-8, -16. The complaint also charged respondent with omitting from its pre-election report the names of nine contributors whose donations exceeded $100 each. At a subsequent hearing, *385 an Administrative Law Judge (ALJ) agreed that respondent had a reporting obligation under the Act, and recommended imposition of fines totaling $600 (to be halved if paid within thirty days). He also ruled that the nine unidentified contributions totaling $9,390 be treated as anonymous contributions that escheat to the State pursuant to N.J.S.A. 19:44A-11, and ordered payment of these monies within thirty days. These findings and recommendations were adopted by ELEC on May 20, 1985.
On appeal, the Appellate Division held that respondent was properly found to be within the coverage of the Act's reporting requirements. 208 N.J. Super. at 586-87. It nonetheless reversed the ALJ's ruling because of its view that respondent, "acting without the guidance of this opinion, might reasonably not have so understood the statute." Id. at 588. In giving its opinion prospective effect, the court also emphasized the "penal nature" of the Act. Ibid. We granted certification, 104 N.J. 442 (1986), limited solely to the question whether the Appellate Division's interpretation of the New Jersey campaign finance law should have been applied in this litigation.

II
A threshold issue in this case concerns the applicability of the Campaign Contributions and Expenditures Reporting Act to respondent. Before the Appellate Division, Citizens argued that it should not be held subject to the Act's reporting requirements. The group contended that it was not a "political committee" under the Act, because it did not "aid or promote the passage or defeat of a public question in [an] election * * *." N.J.S.A. 19:44A-3i.[2] Instead, its activities were confined to placing a recall question before the Atlantic City voters.
*386 We agree with the Appellate Division that respondent's argument ignores the fundamental purposes of the Act. 208 N.J. Super. at 586. In enacting the election-finance laws, the Legislature's objective was to fix the "glare of the public spotlight" on all activities intended to affect the political process in this State. Hearing on Senate Bill No. 1124 Before the Assembly Judiciary Comm. (hereinafter Assembly Hearing), at 4 (1973) (statement of Sen. Schluter); see also New Jersey Election Law Revision Comm'n, Report to the Governor and Legislature, at 3 (1970) ("Stringent disclosure requirements on every aspect of political financing must be imposed and enforced"); New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 135 N.J. Super. 537, 544 (Ch.Div. 1975) ("The manifest objective of the New Jersey Campaign [Contributions] and Expenditures Reporting Act is to identify and attempt to regulate the significant flow of substantial wealth aimed at affecting the outcome of elections, public questions and the legislative process."), rev'd on other grounds, 155 N.J. Super. 218 (App.Div. 1977), modified on other grounds, 82 N.J. 57 (1980). This broad legislative purpose, which was incorporated by the Legislature into the body of the Act, see N.J.S.A. 19:44A-2, is evident in the remarks of Senator William Schluter, a sponsor of the original legislation:
The concept, unanimously recommended by the Election Law Revision Commission, is one involving disclosure. Most importantly, any bill which is to be effective in this area must plug up all of the loopholes. [Assembly Hearing at 4 (Statement of Sen. Schluter).]
Respondent's interpretation of the Act would exclude from its reporting requirements a significant number of political committees that restricted their activities to the circulation of petitions advocating elections to recall officials or to decide other public questions. We cannot conceive, in light of the history and plain language of the Act, that the Legislature *387 intended to limit the reach of the Act's disclosure requirements in such a manner. As the Appellate Division observed, "[i]t would defy logic to find a legislative concern with the recall election but not with the preliminary petition effort * * * [which] is as much a part of the overall electoral process as the voting itself." 208 N.J. Super. at 586.[3] Moreover, in view of the significant efforts required to place the recall question on the ballot, it is obvious that respondent's activities were intended to "aid or promote the passage" of the recall question. We therefore conclude that respondent was properly found to be a "political committee" under the Act.

III
In considering the prospective application of the Appellate Division's ruling, we acknowledge that retroactivity questions are "`among the most difficult' problems that engage the attention of courts * * *." Coons v. American Honda Motor Co., 96 N.J. 419, 424-25 (1984) (Coons II) (quoting Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 319, 84 L.Ed. 329, 333 (1940)), cert. denied, 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985). Although retroactive application of judicial decisions is the general rule, see Rutherford Educ. Ass'n v. Rutherford Bd. of Educ., 99 N.J. 8, 21 (1985); Mirza v. Filmore Corp., 92 N.J. 390, 396 (1983), we accord our rulings prospective effect in cases where the interests of justice mandate such an approach. See, e.g., Coons II, supra, 96 N.J. 419; Salorio v. Glaser, 93 N.J. 447 (1983); Cogliati v. Ecco High Frequency Corp., 92 N.J. 402 *388 (1983); Spiewak v. Rutherford Bd. of Educ., 90 N.J. 63 (1982); Merenoff v. Merenoff, 76 N.J. 535, 560 (1978).
When confronted with a request to apply a decision prospectively, a court may follow one of four distinct alternatives:
(1) make the new rule of law purely prospective, applying it only to cases whose operative facts arise after the new rule is announced; (2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigation; (3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review; and, finally, (4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted. [State v. Burstein, 85 N.J. 394, 403 (1981) (citing State v. Nash, 64 N.J. 464, 468-70 (1974)).]
In choosing between these options, the court must weigh considerations of fairness to the litigants as well as the dictates of sound public policy. See Rutherford, supra, 99 N.J. 8, 22; State v. Nash, supra, 64 N.J. at 469.
The decision to limit a ruling's retroactive effect may also be influenced by the procedural context in which the ruling is announced. This case concerns a judicial interpretation of a statute providing for civil penalties. As we observed in Salorio v. Glaser, supra, 93 N.J. at 463-64, "[f]actors that may be relevant in the criminal field, such as integrity of the judicial process [or] impairment of the basic purpose of the jury to determine the truth * * * may not be applicable here." Instead, our primary concern is with "considerations of fairness and justice, related to reasonable surprise and prejudice to those affected * * *." Oxford Consumer Discount Co. v. Stefanelli, 104 N.J. Super. 512, 520 (App.Div. 1969), aff'd as modified, 55 N.J. 489, app. dismissed sub nom. First Mercantile Discount Co. v. Stefanelli, 400 U.S. 808, 91 S.Ct. 45, 27 L.Ed.2d 38 (1970). We therefore look to our recent decisions confronting retroactivity in the context of civil litigation for the proper standards to apply in resolving this prospectivity question. See Coons II, supra, 96 N.J. at 431-32 (declining to apply *389 the "clear-break" retroactivity standard used by the Supreme Court in United States v. Johnson, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), modified by Griffith v. Kentucky, 479 U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), to civil cases).
In Coons II, we adopted the "equitable balancing test" employed by the Supreme Court to decide retroactivity issues arising in civil proceedings. 96 N.J. at 426-27 (quoting Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355-56, 30 L.Ed.2d 296, 306 (1971)). That analysis focuses on three relevant considerations:
First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * *. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." * * * Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the `injustice or hardship' by a holding of nonretroactivity." [Coons II, supra, 96 N.J. at 427 (quoting Chevron Oil Co. v. Huson, supra, 404 U.S. at 106-07, 92 S.Ct. at 355, 30 L.Ed.2d at 306 (citations omitted)).]
See also Rutherford, supra, 99 N.J. at 23 (relevant factors are whether the decision constitutes a new principle of law, whether retroactive application would further the purpose of the new rule, and whether retroactive application would "work an injustice upon those who had reasonably relied upon the old rule").
Applying this analysis, we first consider whether the substantive ruling actually constitutes a new principle of law. State v. Burstein, supra, 85 N.J. at 403; accord Rutherford, supra, 99 N.J. at 21; Coons II, supra, 96 N.J. at 415-16; Cogliati v. Ecco High Frequency Corp., supra, 92 N.J. at 415-16. Prior to this case, no court had considered whether a group whose activities were restricted to the circulation of recall petitions was a political committee under N.J.S.A. 19:44A-3i. Indeed, neither party refers us to a decision in which the statutory definition of *390 a political committee is addressed. Accordingly, the Appellate Division's ruling was "one of first impression" that resolved a previously undetermined issue of statutory construction. 208 N.J. Super. at 587.
However, our analysis does not end with the determination that a new rule of law has been announced. Under the Coons II/Chevron framework, respondent, in order to be relieved from its reporting obligation under the Act, must show that it reasonably relied on a conflicting rule of law, or its own contrary interpretation of the statute, in concluding that it was not required to file campaign-finance reports. See Rutherford, supra, 99 N.J. at 23; Coons II, supra, 96 N.J. at 441 (Garibaldi, J., dissenting).
Reliance is often a critical factor in determining the extent of a new ruling's retrospective application. See Coons II, supra, 96 N.J. at 433-34; Salorio v. Glaser, supra, 93 N.J. at 465; Cogliati v. Ecco High Frequency Corp., supra, 92 N.J. at 416-17. However, reliance on a contrary rule will not support prospective application unless it is shown to have been reasonable. See Mirza v. Filmore Corp., supra, 92 N.J. at 399; Wangler v. Harvey, 41 N.J. 277, 286 (1963); Dalton v. St. Luke's Catholic Church, 27 N.J. 22, 26-28 (1958). Our decision in Mirza v. Filmore Corp., supra, illustrates our concern with justifiable reliance. In that case, we gave full retroactive effect to our ruling that commercial landowners are liable for injuries due to ice and snow accumulations on abutting sidewalks. 92 N.J. at 396-400. We observed that "the reasonableness of reliance on the continuance of limited immunity from liability for sidewalk conditions was dubious. The demise of that immunity had been foreshadowed, at least in part, for several years." Id. at 399 (footnote omitted).
The same considerations of reasonableness are relevant where a party seeks prospective application of a decision interpreting an unsettled statutory provision, claiming reliance on a conflicting construction of the statutory term. See Zimmerman *391 v. Municipal Clerk, Berkeley Township, 201 N.J. Super. 363 (App.Div. 1985); Levin v. Lewis, 179 N.J. Super. 193 (App. Div. 1981). In Levin, the Appellate Division held that the Consumer Frauds Act, N.J.S.A. 56:8-1 to -38, applied to businesses specializing in antique-car repair and restoration, and gave its ruling full retroactive application. 179 N.J. Super. at 199-202. The panel recognized that courts are generally empowered to confine the effect of a decision where a party has not unreasonably relied on a "different conception" of a statute, but found no reason to accord its ruling prospective application only. Id. at 202. Citing the broad remedial purposes of the Consumer Frauds Act, the court observed:
[A]ppellant should not have reasonably assumed that his business was exempt. Rather, a more reasonable approach would have been to assume that he was included within the ambit of the regulation. [Ibid.]
In Zimmerman, another Appellate Division panel rejected a claim that the Optional Municipal Charter Law, N.J.S.A. 40:69A-1 to -210, authorized the filing of recall petitions containing the names of several incumbents. 201 N.J. Super. at 368-70. The court also declined to confine its ruling to prospective application. Id. at 370. Acknowledging that its decision was "[a] case of first impression under the statute," the panel nonetheless concluded that it was merely "a reaffirmation of an evident legislative intent which has been the general interpretation for some period of time." Ibid. Cf. Turner v. Aldens, 179 N.J. Super. 596, 605 (App.Div. 1981) (applying the Retail Installment Sales Act to charge accounts offered by out-of-state defendants, but limiting the retrospective effect of its ruling because of defendants' "not wholly unreasonable reliance on a contrary doctrine").
Applying these standards to the present case, we conclude that the restricted application of the Appellate Division's ruling was improper. Respondent could not reasonably have assumed that it had no reporting obligation under the statutory scheme. In enacting a comprehensive election-finance law, the Legislature plainly intended to "regulate the flow of money into *392 election campaigns and open to public view the financial contributions of those seeking to affect the public response." 208 N.J. Super. at 586 (citing New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, supra, 135 N.J. Super. at 544). The statute itself expressly provides that its terms are to be "construed liberally to effectuate the legislative intent," N.J.S.A. 19:44A-23, and that the public policy of this state mandates "the reporting of all contributions received and expenditures made * * * to aid or promote the passage or defeat of a public question in any election," N.J.S.A. 19:44A-2. Moreover, the Act's legislative history is replete with examples of political organizations subject to the statute's disclosure requirements. See, e.g., Assembly Hearing at 47A (statement of Assemblywoman Klein) (legislation would require reporting by interest groups organized to promote or object to bond issues); id. at 61A (statement of Lewis Ripps, Legislative Affairs Chairman, New Jersey Common Cause) (Common Cause would incur reporting obligation if it supported issue appearing on ballot). In view of the Act's broad remedial purpose, it would have been far more reasonable for respondent to assume that its activities triggered a filing requirement. See Levin v. Lewis, supra, 179 N.J. Super. at 200, 202.
The Appellate Division's decision also emphasized the absence of a definition of the term "public question" from the Act. See 208 N.J. Super. at 586-88. We find this factor to be unpersuasive as a basis for limiting the retroactive effect of the Appellate Division's ruling. While it is true that the Act itself does not define the phrase "public question" as it appears in N.J.S.A. 19:44A-3i, any resulting lack of clarity is easily resolved by resort to N.J.S.A. 19:1-1, the general definitions section of Title 19.[4] Significantly, the regulations promulgated *393 under the Act adopt the definition of public question contained in N.J.S.A. 19:1-1. N.J.A.C. 19:15-1.7.
We are also unconvinced that respondent actually relied on its own interpretation of N.J.S.A. 19:44A-3 in determining not to file its campaign-finance reports. In the past, we have emphasized that a party seeking to avoid retrospective application of a decision must show actual reliance on a contrary principle of law. See Wangler v. Harvey, supra, 41 N.J. at 286; Coons II, supra, 96 N.J. at 441 (Garibaldi, J., dissenting). As noted above, respondent was informed by ELEC eight days before the recall election that it was, in fact, required to file pre- and post-election reports. Upon receipt of that notice, respondent no longer had any legitimate basis for continuing to assume that it had no reporting obligation.
In sum, we conclude that respondent has failed to make an adequate showing of a justifiable belief that it was exempt from the filing requirements of the campaign-finance laws. Because no convincing reason has been offered that would warrant prospective application of the Appellate Division's decision, we hold that respondent may not avoid liability for the penalties assessed by the Commission.[5]

IV
In his ruling, the ALJ noted that respondent was "unable to identify or otherwise explain contributions received amounting *394 to $9,390." Defining an anonymous contribution as one "the source of which is unknown to respondent[,]" the ALJ ordered that all such contributions be paid over to the State within thirty days if no identification of the contributors of the funds could be made.
In our view, this portion of the judgment is founded on an overly-broad construction of the term "anonymous contribution." N.J.S.A. 19:44A-20 provides that
[n]o contribution of money or other thing of value, nor obligation therefor, shall be made * * * anonymously, in a fictitious name, or by one person or group in the name of another, to support or defeat a candidate in an election or to aid the passage or defeat of any public question * * *.
N.J.S.A. 19:44A-11 further states that "[a]ny anonymous contribution received by a campaign treasurer or deputy campaign treasurer shall not be used or expended, but shall be returned to the donor, if his identity is known, and if no donor is found, the contribution shall escheat to the State." See also N.J.A.C. 19:25-11 (carrying over the prohibition of anonymous contributions into the regulations promulgated under the Act).
The phrase "anonymous contribution" is not defined in either the Act or the accompanying regulations. However, reference to the Assembly hearings in which the original bill was considered sheds some light on what the Legislature may have intended the statutory prohibition to include. During an extended discussion of the anonymous-contributions problem, Senator Schluter, a sponsor of the Act, explained his view of the meaning of the term:
Now the fact of the matter is that the acceptance, the offering and the acceptance of an anonymous contribution, requires two people or more. It is a conspiracy, if you will. [Assembly Hearing at 48 (statement of Sen. Schluter).]
Our reading of the legislative history and our understanding of the ordinary meaning of the statutory term, see Levin v. Parsippany-Troy Hills Township, 82 N.J. 174, 182 (1980), leads us to conclude that an anonymous contribution occurs only when a candidate or campaign treasurer receives a contribution, the source of which is unknown at the time of receipt.
*395 The ALJ applied a broader standard in analyzing the contributions received by respondent, adopting the view that any contribution whose origin is unknown at the time of reporting must be treated as anonymous, even where the lack of information concerning the donor is a result of poor record-keeping.[6] We assume that the Commission will view with skepticism attempts to avoid responsibility for accepting anonymous contributions on the basis of allegedly inadequate records. Nevertheless, we are constrained to reverse that portion of the judgment ordering escheat of $9,390 in purportedly anonymous contributions. Because the record before us does not permit a conclusion as to whether the contributions in question were anonymous, we remand the matter to the Commission for further proceedings with respect to this issue.
The judgment of the Appellate Division is affirmed in part, reversed in part, and the matter remanded for further proceedings not inconsistent with this opinion.
For reversal  Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN  7.
For affirmance  None.
NOTES
[1] Under the Campaign Contributions and Expenditures Reporting Act, N.J.S.A. 19:44A-1 to -44, candidates and political committees must file pre-election and post-election reports detailing contributions received and expenditures made during a political campaign. N.J.S.A. 19:44A-8, -16; N.J.A.C. 19:25-4.3. Pre-election reports must be filed by the campaign treasurer of a political committee on the 29th day preceding the election and on the 11th day preceding the election, while post election reports must be filed by the 20th day following the election. N.J.S.A. 19:44A-16b; N.J.A.C. 19:25-9.4. When a political committee ceases operating after an election, the treasurer must include in the post-election report a final accounting of the campaign fund, which must set forth the disposition of the fund balance at the time of dissolution. N.J.S.A. 19:44A-16b; N.J.A.C. 19:25-19.4. All of the required reports must include the name and address of each contributor of money, personal services, or any other item of value exceeding $100. N.J.S.A. 19:44-8a, c; N.J.A.C. 19:25-11.3.
[2] N.J.S.A. 19:44A-3i provides that "[t]he term `political committee' means any two or more persons acting jointly, or any corporation, partnership, or any other incorporated or unincorporated association which is organized to, or does, aid or promote the nomination, election or defeat of any candidate or candidates for public office, or which is organized to, or does, aid or promote the passage or defeat of a public question in any election * * *."
[3] It is evident that the Legislature viewed the circulation of petitions as an integral part of the recall process. For example, N.J.S.A. 40:69A-169 requires that the recall petition "demand the removal of a designated incumbent * * * [and] set forth a statement of the cause upon which removal is sought." The statute also calls for notice to the official whose recall is sought upon the filing of the petition; the official is then given five days to resign before the fixing of a date for the recall election. N.J.S.A. 40:69A-171.
[4] N.J.S.A. 19:1-1 provides, in pertinent part, that the term "public question" includes "any question, proposition or referendum required by the legislative or governing body of this State or any of its subdivisions to be submitted by referendum procedure to the voters of the State or political subdivision for decision at elections."
[5] As noted earlier, the Appellate Division emphasized the "penal nature" of the Act in giving its ruling prospective effect. 208 N.J. Super. at 588. Although the Act provides for criminal penalties in connection with any knowing and intentional violation of its reporting requirements, N.J.S.A. 19:44A-21a, b, these penalties were not imposed in the present case. Nor do we find that the civil penalties assessed were so significant as to be penal in nature. See In re Garay, 89 N.J. 104, 111-14 (1982). We therefore conclude that consideration of the Act's "penal" effect was improper.
[6] We note that the Act contains separate civil penalties for the failure to maintain the financial records required under the statute, as well as for the filing of any report that omits or incorrectly states campaign-account activity. N.J.S.A. 19:44A-22.

A question raised at oral argument, which we do not decide but which may require consideration by the Commission, concerns the propriety of a campaign treasurer's expenditure of funds, the source of which is known at the time of receipt but unknown at the time of the proposed expenditure.