997 A.2d 1067 (2010)
414 N.J. Super. 152
William W. ALLEN and Vivian Allen, Plaintiffs-Appellants,
v.
V AND A BROTHERS, INC., d/b/a Caliper Farms Nursery and Landscaping Services, Defendants, and
Angelo DiMeglio, The Estate of Vincent DiMeglio, deceased; and Thomas Taylor, Individually, Defendants-Respondents.
DOCKET NO. A-6218-07T4.
Superior Court of New Jersey, Appellate Division.
Submitted February 24, 2010.
Decided June 23, 2010.
Katz & Dougherty, LLC, Mercerville, for appellants (George T. Dougherty, on the brief).
Maselli Warren, P.C., Princeton, for respondents (Paul J. Maselli and Peter B. Paris, on the brief).
Before Judges CUFF, PAYNE and WAUGH.
The opinion of the court was delivered by
*1068 PAYNE, J.A.D.
Suit was instituted by plaintiffs William W. Allen and Vivian Allen alleging, in the first count, breach of contract by defendant V and A Brothers, Inc., d/b/a/ Caliper Farms Nursery and Landscaping Services, as the result of its improper construction of a retaining wall and substitution of inferior backfill for that specified in the plans, resulting in the failure of the wall and substantial property damage. In the second count, plaintiff alleged violations of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -184, by V and A Brothers, its principals, Angelo DiMeglio and the Estate of Vincent Di Meglio,[1] and its employee, Thomas Taylor.
Thereafter, partial summary judgment was entered in plaintiffs' favor finding defendant V and A Brothers liable for failing to execute a written contract for the work in violation of N.J.A.C. 13:45A-16.2(a)(12), a regulation promulgated pursuant to the CFA. In an additional order of partial summary judgment, the claims against the individual defendants were dismissed. A jury trial then took place, resulting in a finding of liability on the part of V and A Brothers for breach of contract, and an award of damages on that claim in the amount of $100,000. Additionally, the jury awarded damages of $25,000 for the failure by V and A Brothers to execute a written contract in violation of N.J.A.C. 13:45A-16.2(a)(12). It awarded damages of $25,000 for the failure by V and A Brothers to obtain final approval of the project before accepting final payment from plaintiffs in violation of N.J.A.C. 13:45A-16.2(a)(10)(ii), and it awarded damages of $80,000 for the modification by V and A Brothers of the design of the retaining wall and substitution of inferior backfill material for that specified without the knowledge or consent of the plaintiffs in violation of N.J.A.C. 13:45A-16.2(a)(3)(iv). When the damages awarded pursuant to the CFA were trebled, the total amount of the award equaled $490,000. Attorneys' fees were also awarded.
Although plaintiffs prevailed on their claims against V and A Brothers, they have appealed from the dismissal of their CFA claims against the individual defendants, Angelo DiMeglio, the estate of Vincent DiMeglio and Thomas Taylor. We reverse and remand.
The Consumer Fraud Act provides, in N.J.S.A. 56:8-2, that:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; . . .
"Person" is defined in the preceding section to
include any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof.
[N.J.S.A. 56:8-1d.]
The Supreme Court set forth the history of the CFA in its decision in Cox v. Sears *1069 Roebuck & Co., 138 N.J. 2, 647 A.2d 454 (1994), stating:
In 1960, the Legislature passed the Consumer Fraud Act "to permit the Attorney General to combat the increasingly wide-spread practice of defrauding the consumer." Senate Committee, Statement to the Senate Bill No. 199 (1960). The Act conferred on the Attorney General the power to investigate consumer-fraud complaints and promulgate rules and regulations that have the force of law. N.J.S.A. 56:8-4. In 1971, the Legislature amended the Act to "give New Jersey one of the strongest consumer protection laws in the nation." Governor's Press Release for Assembly Bill No. 2402, at 1 (Apr. 19, 1971). The Legislature expanded the definition of "unlawful practice" to include "unconscionable commercial practices" and broadened the Attorney General's enforcement powers. Ibid. That amendment also provided for private causes of action, with an award of treble damages, attorneys' fees and costs. Ibid. Governor Cahill believed that those provisions would provide "easier access to the courts for the consumer, [would] increase the attractiveness of consumer actions to attorneys and [would] also help reduce the burdens on the Division of Consumer Affairs." Governor's Press Release for Assembly Bill No. 2402, at 2 (June 29, 1971).
[Id. at 14-15, 647 A.2d 454.]
The Court has directed that the CFA, as remedial legislation, be construed liberally in favor of consumers. Id. at 15, 647 A.2d 454 (citing Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 69, 494 A.2d 804 (1985); Levin v. Lewis, 179 N.J.Super. 193, 200, 431 A.2d 157 (App.Div.1981); State v. Hudson Furniture Co., 165 N.J.Super. 516, 520, 398 A.2d 900 (App. Div.1979); and Martin v. American Appliance, 174 N.J.Super. 382, 384, 416 A.2d 933 (Law Div.1980)). "[T]he Act is designed to protect the public even when a merchant acts in good faith." Cox, supra, 138 N.J. at 16, 647 A.2d 454 (citing D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J.Super. 11, 23, 501 A.2d 990 (App.Div. 1985)).
The Court in Cox explained that to violate the CFA, a "person" must commit an "unlawful practice" as defined in the legislation, and that an unlawful practice can consist of an affirmative act, a knowing omission or a regulatory violation. Id. at 17, 647 A.2d 454.
When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act. Chattin v. Cape May Greene, Inc., 124 N.J. 520, 522, 591 A.2d 943 (1991) (Stein, J. concurring). However, when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud. Ibid.

* * *
The third category of unlawful acts consists of violations of specific regulations promulgated under the Act. In those instances, intent is not an element of the unlawful practice, and the regulations impose strict liability for such violations. Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 376, 371 A.2d 13 (1977). The parties subject to the regulations are assumed to be familiar with them, so that any violation of the regulations, regardless of intent or moral culpability, constitutes a violation of the Act.
[Id. at 17-19, 647 A.2d 454.]
In a series of decisions, courts have imposed liability upon individuals who were principals or employees of corporations sued for consumer fraud and who directly participated in the conduct giving rise to CFA liability. See Gennari v. Weichert *1070 Co. Realtors, 148 N.J. 582, 608-10, 691 A.2d 350 (1997) (imposing CFA liability on a builder and his wife, who was an officer in the builder's corporation and a Weichert realtor, for affirmative misrepresentation of the builder's experience and qualifications); New Mea Const. Corp. v. Harper, 203 N.J.Super. 486, 502, 497 A.2d 534 (App.Div.1985) (concluding that the CFA applies to a builder of a single-family home who uses substandard materials in violation of contract and directing the judge to assess damages against the builder's principal "if he finds from a review of the record and his findings that she meets the test for liability under the act."); Hyland v. Aquarian Age 2,000 Inc., 148 N.J.Super. 186, 193, 372 A.2d 370 (Ch.Div.1977) (in a case involving the offer of lifetime memberships in an entity providing discounts from merchants, none of which contracted for a period greater than ten years, remanding for a determination of the potential personal liability of the company's founder, observing that "[t]here is no suggestion that the statute was not intended to include natural persons who violate the act. More particularly, N.J.S.A. 56:8-1(d) includes natural persons within its definition of persons."); Kugler v. Koscot Interplanetary, Inc., 120 N.J.Super. 216, 251-58, 293 A.2d 682 (Ch.Div.1972) (imposing liability upon corporate principal who participated in a deceptive pyramid sale scheme to attract distributors for the corporation's cosmetic products).
In imposing liability for violation of the CFA on individuals or finding legal grounds for doing so, courts have not found it necessary to pierce the corporate veil in order to reach corporate principals and employees. Instead, they have interpreted the CFA, by its use of the term "person" in the liability provisions of N.J.S.A. 56:8-2 and the definition of "person" in N.J.S.A. 56:8-1(d), as providing sufficient statutory authority for the imposition of individual liability in circumstances in which the individual committed the unconscionable commercial practice or other prohibited act and an ascertainable loss resulted. See, e.g., New Mea, supra, 203 N.J.Super. at 502, 497 A.2d 534; Aquarian Age, supra, 148 N.J.Super. at 193, 372 A.2d 370.
We note that the conduct in the cases that we have cited was comprised of affirmative acts, rather than regulatory violations. We find no principled basis for distinguishing between the two for purposes of the imposition of individual liability.
We find it unnecessary to determine whether the tort participation theory, discussed at length by the Supreme Court in its decision in Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 788 A.2d 268 (2002), provides an alternate ground for imposition of CFA liability on the individual defendants in this matter. In Saltiel, an architect sued a turfgrass corporation and its officers, claiming that the corporation had negligently prepared and designed turf specifications for an athletic field and that the officers were personally liable because they participated in the corporation's tort. On appeal, the sole issue was whether the trial court had erred in granting summary judgment to the corporate officers, Caton and Indyk. As framed by the Court, resolution of that issue required the Court to consider "(1) the proper application of the participation theory of personal liability for tortious conduct by corporate officers under New Jersey law; and (2) whether the plaintiff's claim against Indyk and Caton sounds in tort or contract." Id. at 302, 788 A.2d 268.
In discussing the participation theory, the Court noted that its "essence" is "that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort." Id. at 303, *1071 788 A.2d 268. It stated that "[a] predicate to liability is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct." Ibid. The Court also observed that the majority of the cases utilizing the participation theory had involved fraud and conversion. Id. at 304, 788 A.2d 268. However, it noted that "[a] number of jurisdictions, including New Jersey, also apply the participation theory to hold corporate officers personally liable for certain statutory violations." Id. at 305, 788 A.2d 268 (citing Koscot Interplanetary, supra, 120 N.J.Super. at 257, 293 A.2d 682).
Turning to the case before it, the Court noted that the conduct at issue was not intentional but, instead, allegedly negligent. Ibid. After discussing out-of-state precedent applying the participation theory to such conduct, the Court stated that "[w]hatever may be the appropriate standard for limiting corporate officers' liability under the participation theory, the essential predicate for application of the theory is the commission by the corporation of tortious conduct, participation in that tortious conduct by the corporate officer and resultant injury to the plaintiff." Id. at 309, 788 A.2d 268. However, if the breach of the corporation's duty was determined to be governed by contract law, the theory did not apply. Ibid. The Court then concluded that plaintiff had not pled or supported a cause of action sounding in tort, but only in contract. Id. at 315, 788 A.2d 268. It continued by observing that "[u]nder New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Id. at 316, 788 A.2d 268 (citing New Mea, supra, 203 N.J.Super. at 493-94, 497 A.2d 534) (refusing to recognize a tort cause of action against the corporation's principal, while directing the judge to determine whether damages should be assessed against that person for violation of the CFA). Finding that the appeal involved a breach of contract, making the participation theory of individual liability inapplicable, the Court reversed our decision to the contrary and reinstated the order of summary judgment entered in favor of Caton and Indyk. Id. at 318, 788 A.2d 268.
We find it significant that the plaintiff in Saltiel did not allege a cause of action based upon a violation of the CFA. Thus, the matters at issue in that case differed significantly from those at issue here. Moreover, we do not read Saltiel as necessarily rejecting a tort theory of liability in a CFA case. In this regard, we note the Court's recognition that such a theory was used in a statutory, CFA context to impose liability on a defendant corporate director in Koscot Interplanetary. Saltiel, supra, 170 N.J. at 305, 788 A.2d 268. At very least, the Court left the issue of the applicability of the participation theory unresolved in circumstances in which a statute may provide the basis for tort liability. In the absence of any explicit statement to that effect, we reject any suggestion that the Saltiel Court's discussion of a participation theory of individual tort liability serves to restrict the scope of personal liability under the CFA. As a consequence, we find the dismissal of claims against the three individual defendants in this matter to have been erroneous.
In their briefs on appeal, plaintiffs argue that upon reversal of summary judgment, CFA liability on the part of the three individual defendants automatically adheres. We disagree. Liability can be imposed only upon proof of personal participation by an individual in a particular regulatory violation. We remand for a determination of such liability, noting that a jury has already determined the quantum *1072 of damages flowing from each of the regulatory violations.
Reversed and remanded.
NOTES
[1] Vincent DiMeglio died after the work at issue was completed but prior to trial in this matter.