915 A.2d 513

ANTHONY MALINOWSKI, PLAINTIFF–APPELLANT, v. VICTOR JACOBS, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF MARY JACOBS, DECEASED, STATE OF NEW JERSEY, RICHARD CORNELISON, FCC NATIONAL BANK, ASSIGNEE OF FIRST NATIONAL BANK OF CHICAGO, N/K/A FIRST USA BANK, DEFENDANTS, AND CHERRYSTONE BAY, LLC, PROPOSED INTERVENOR–RESPONDENT.

Argued November 29, 2005—Decided January 29, 2007.

*Keith A. Bonchi,* argued the cause for appellant (*Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill,* attorneys).

*Robert W. Keyser,* argued the cause for respondent (*Kaplin, Stewart, Meloff, Reiter & Stein,* attorneys; *Mr. Keyser* and *Lisa A. Buckalew,* on the brief).

Justice ALBIN delivered the opinion of the Court.

In *Simon v. Cronecker,* 189 *N.J.* 341, 915 *A.*2d 510, 2007 WL 208520 (2007), decided today, we held that after the filing of an action to foreclose a tax certificate on property, a third-party investor purchasing that property may not redeem the certificate without first complying with *N.J.S.A.* 54:5–89.1 and 54:5–98, which require timely · intervention in the foreclosure action and the payment of more than nominal consideration for the property. *Id.* at 311, 915 *A.*2d 493. In the post-foreclosure complaint period, without the court's oversight and permission, the investor has no right to participate, directly or indirectly, in the redemption process. *Id.* at 335–38, 915 *A.*2d 507–09. In *Simon v. Rando,* 189 *N.J.* 339, 915 *A.*2d 509, 2007 WL 208515 (2007), also decided today, we applied that same principle to a third-party investor purchasing prior tax sale certificates after the holders of subsequently issued tax certificates instituted foreclosure proceedings. *Id.* at 344, 915 *A.*2d 512. In *Rando,* we affirmed the Appellate Division, which held that "[t]he obligation to intervene in the action is essential to judicial review of the adequacy of consideration paid for a post-complaint assignment of an interest in property subject to foreclosure." 374 *N.J.Super.* 147, 155, 863 *A.*2d 1078 (App.Div. 2005), *aff'd,* 189 *N.J.* 339, 915 *A.*2d 509, 2007 WL 208515 (2007). Thus, in *Rando,* because the third-party investor acquired prior tax certificates in the post-foreclosure complaint stage and failed to intervene in the foreclosure proceedings commenced by the holders of the subsequently issued certificates, the investor was barred from participating in the redemption process.

In this appeal, the only issue before us is whether the rule of law announced by the appellate panel in *Rando,* which we essentially affirmed in both *Cronecker* and *Rando,* is to be retroactively applied to the facts of this case. That issue comes to us as of right based on the dissent in the Appellate Division. *R.* 2:2–1(a)(2).

To frame the issue, a brief recitation of the relevant facts will suffice.

## I.

### A.

In 1999, at a public auction, plaintiff Anthony Malinowski purchased a tax sale certificate for property located in Raritan Borough. After waiting more than the two-year period required by *N.J.S.A.* 54:5–86, plaintiff filed a complaint to foreclose on the tax certificate. The complaint named the property owner and the holder of a mortgage as persons having the statutory right to redeem the certificate. The last date for redemption was set for March 1, 2004. The failure to redeem the certificate would result in final judgment in favor of plaintiff, who would then take fee simple title to the property.

On February 24, 2004, Cherrystone Bay, LLC (Cherrystone), purchased the mortgage, allegedly, for $55,900—the value of the mortgage. Plaintiff later questioned whether Cherrystone in fact paid that sum of money. Cherrystone, now as the mortgage holder, asserted that it had the statutory right to redeem the tax certificate. Without intervening in the foreclosure action, Cherrystone then made various attempts to redeem the certificate, valued at over $49,000, in the tax collector's office.[1] The details of those

---

[1] Plaintiff claims that the property is worth approximately $415,000. He complains that Cherrystone stands to make a $300,000 profit for an investment of just over $100,000 (cost of the mortgage and redemption of the tax sale certificate).

efforts are not relevant to this appeal. On March 3, 2004, judgment was entered in favor of plaintiff, foreclosing on the tax sale certificate. The next day, unaware that judgment had been entered, Cherrystone redeemed the tax certificate.

Cherrystone then filed for the first time a motion to intervene in the foreclosure proceedings in the Chancery Division and to vacate the final judgment. The trial court denied Cherrystone's motion. While Cherrystone's appeal was pending, the Appellate Division decided *Rando*.

### B.

In a split decision, the Appellate Division held in an unpublished per curiam opinion that "*Simon v. Rando* announced a new rule that should have only prospective application." The majority contended that before *Rando*, questions concerning whether a third-party purchaser/assignee paid nominal consideration for a property interest were typically resolved "*after* an attempt to redeem." The majority recognized that the rule in *Rando* "now requires that the resolution of these disputes be triggered by a motion to intervene *prior* to an attempt to redeem." While expressing some concerns about "whether this new rule provides an efficient method of resolving [nominal consideration] disputes," the majority declined Cherrystone's invitation to reach a different conclusion than the *Rando* panel.

The majority determined, however, that the "new rule" should not be applied retroactively. The majority maintained that neither preexisting case law nor the customary manner in which courts had handled redemption challenges would have placed Cherrystone on notice of a duty to intervene in a foreclosure action before seeking redemption. In the majority's view, *Rando* interpreted *N.J.S.A.* 54:5–98 ("redemption shall be made in that cause only") in a way that it had "never before been understood by the courts or practitioners." Concluding that *Rando* announced a new rule of law and fearing that retroactive application "could

have inequitable consequences," the majority decided to apply *Rando* prospectively only.

In a dissenting opinion, Judge Payne expressed her view that *Rando* did not announce "a change in the law," but merely applied existing rules to a new factual variant "of alleged intermeddling" in the redemption process. For that reason, Judge Payne could "find no principled reason why [*Rando* ] should not be retroactively applied."

Judge Payne placed *N.J.S.A.* 54:5–98 and 54:5–89.1 in historical context. Those statutes mandate that after the filing of a tax sale foreclosure complaint, a third-party investor who acquires an interest in the subject property must intervene in the foreclosure action before redeeming the certificate. Judge Payne stated that *N.J.S.A.* 54:5–98

provides, and has provided in substantially similar form since amendments to the Tax Sale Law in 1928, [*L.* 1928, *c.* 211, § 49], that "[a]fter the complaint [for foreclosure] has been filed redemption shall be made *in that cause only,* provided notice of the suit has been filed in the office of the tax collector." (Emphasis supplied.) Parties who hold a recorded interest and have either appeared or defaulted may thus redeem until final judgment is entered, and their redemption will be deemed "in the cause." However, parties who do not hold a recorded interest and thus were never parties to the foreclosure proceeding, must move to intervene.

This procedural requirement of intervention appears as well in *N.J.S.A.* 54:5–89.1, which as enacted in 1954, [*L.* 1954, *c.* 186, § 1], provided that the holder of an unrecorded interest in property would be barred by the foreclosure action "in the same manner as if he had been made a party to and appeared in such action, and the judgment therein had been made against him as one of the defendants therein." However, the statute provided additionally that such a holder, upon recordation of his interest, "may apply to be made a party to such action."

Significantly, the intervention procedure set forth in *N.J.S.A.* 54:5–89.1 was amended in response to the abuses of the tax sale process by heir hunters identified by the Supreme Court in its decision in *Bron v. Weintraub,* 42 *N.J.* 87[, 199 *A.*2d 625] (1964).... As amended, *N.J.S.A.* 54:5–89.1 [*L.* 1967, *c.* 149 § 1] permits scrutiny of proposed intervenors, (including heir hunters) prior to foreclosure....

Thus, Judge Payne determined that the requirement that a third-party investor intervene in a tax sale foreclosure "is integral to the Legislature's response to the abuses illustrated in *Bron*." She also disagreed with the majority that the statutory interven-

tion requirement has "been commonly ignored." To highlight this point, Judge Payne cited to *Savage v. Weissman*, 355 *N.J.Super.* 429, 443, 810 *A*.2d 1077 (App.Div.2002), a case decided before *Rando* addressing a third-party investor's obligation to intervene in the post-foreclosure complaint period in accordance with the demands of *N.J.S.A.* 54:5–98. The *Savage* court stated that "to allow a party which obtains an interest in the property after the filing of the complaint to proceed directly to the tax collector would totally frustrate the public policy of this State as announced by the Supreme Court and codified by the Legislature." *Ibid.*

Judge Payne reasoned that a sophisticated commercial entity such as Cherrystone should have been aware of the statutory procedures and decisional law governing redemption, and that Cherrystone's failure to intervene in the foreclosure action before attempting redemption leads to the "inference that it sought to avoid the scrutiny of its business transactions that would have occurred if intervention in the cause had been sought as required by *N.J.S.A.* 54:5–89.1."

Based on the dissent in the Appellate Division, plaintiff appealed to this Court as of right pursuant to *Rule* 2:2–1(a)(2). We now reverse the appellate panel, substantially for the reasons given by Judge Payne in her dissenting opinion. The logic of that conclusion leads us to hold that *Cronecker* and *Rando* must be given retroactive effect. We add the following for the sake of clarity and to elucidate further the reasons for our decision.

II.

The principles enunciated in our decisions in *Cronecker* and *Rando*, and in Judge Payne's dissent, come from a straightforward reading and interpretation of the governing statutes. We are merely applying the rules in effect at the time of the decisions in those cases and in this case. Because there is no new rule of law and because the parties and their lawyers are presumed to know the applicable statutes, it would be inequitable to plaintiffs to apply our decisions prospectively.

We begin by noting that judicial decisions generally apply retroactively. *Green v. Auerbach Chevrolet Corp.*, 127 *N.J.* 591, 600, 606 *A.*2d 1093 (1992). We depart from that general principle and turn to prospective application when "considerations of fairness and justice, related to reasonable surprise and prejudice to those affected" counsel us to do so. *N.J. Election Law Enforcement Comm'n v. Citizens to Make Mayor–Council Gov't Work*, 107 *N.J.* 380, 388, 526 *A.*2d 1069 (1987) (citation and quotation marks omitted). "Accordingly, prospective application is appropriate when (1) the decision establishes a new rule of law, by either overruling past precedent or deciding an issue of first impression, and (2) when retroactive application could produce substantial inequitable results." *Velez v. City of Jersey City*, 180 *N.J.* 284, 297, 850 *A.*2d 1238 (2004).

In confirming that a third-party investor has a statutory requirement to intervene in a tax foreclosure action in the circumstances presented in *Cronecker* and *Rando*, we are not overruling precedent. Indeed, those cases were foreshadowed by the Appellate Division's ruling in *Savage*. As discussed in Judge Payne's dissent, *Savage, supra*, explained that "to allow a party which obtains an interest in the property after the filing of the complaint to proceed directly to the tax collector" without first intervening in the tax sale foreclosure action would violate both *N.J.S.A.* 54:5–89.1 and 54:5–98. 355 *N.J.Super.* at 443, 810 *A.*2d 1077. From a practical viewpoint, the tax collector knows who can redeem a tax certificate from reviewing the foreclosure complaint, which lists the names of those with an interest in the subject property. Only when a third-party investor, who acquires a post-complaint interest in the subject property, intervenes in the foreclosure action does the tax collector learn of the investor's right to redeem. *See N.J.S.A.* 54:5–98 ("[N]otice of the suit [must be] filed in the office of the tax collector."). We find that our decisions today have merely construed provisions of the Tax Sale Law in an unremarkable way.

Thus, we cannot conclude that Cherrystone "reasonably relied on a plausible, although incorrect, interpretation of the law," or that "a member of the public could reasonably have relied on a different conception of the state of the law." *SASCO 1997 NI, LLC v. Zudkewich,* 166 *N.J.* 579, 594, 767 *A.*2d 469 (2001) (citation and internal quotation marks omitted). Indeed, in the case of a third-party investor, such as Cherrystone, who acquired a property interest after the commencement of a tax sale foreclosure action, no plausible interpretation of *N.J.S.A.* 54:5–89.1 and 54:5–98 would lead to the belief that redemption could occur without first intervening in the action.

*N.J.S.A.* 54:5–98, which has remained unchanged for decades, provides that "[a]fter the complaint has been filed redemption *shall* be made *in that cause only.*" (emphasis added). That legislative directive is reinforced by *N.J.S.A.* 54:5–89.1, which provides that a third-party investor shall not "be admitted as a party to [a tax sale foreclosure] action, nor shall he have the right to redeem the lands from the tax sale whenever it shall appear that he has acquired such interest in the lands for a nominal consideration after the filing of the complaint." For the reasons we expressed in *Cronecker,* we do not see any ambiguity in the text of those statutes. Nor have we found any relevant statutory history inconsistent with our reading of those statutes. *Cronecker, supra,* 189 *N.J.* at 335–38, 915 *A.*2d 507–09. As we held in *Cronecker, supra,* and *Rando, supra,* requiring a third-party investor to intervene in the foreclosure action guarantees both payment of more than nominal consideration for property interests and judicial review of the integrity of the redemption process. 189 *N.J.* 336–37, 915 *A.*2d 508; 189 *N.J.* 342–44, 915 *A.*2d 511–12.

We are not swayed by Cherrystone's argument that we should interpret *N.J.S.A.* 54:5–89.1 and 54:5–98 in line with the purported customs of some practitioners. A statute is no less clear merely because those who should abide by its dictates decide to disregard them. Prospective application would allow practitioners who have

chosen to ignore the clear import of the Tax Sale Law to benefit from their transgressions.

Last, both Cherrystone and the appellate panel majority suggest that compliance with the statutory language of *N.J.S.A.* 54:5–89.1 and 54:5–98 may be inefficient in practice. The Legislature, however, has placed the safeguards embodied in those statutes into place for policy reasons pertaining to the integrity of the redemption process. We do not pass on the wisdom of statutes or substitute our preferences for the policy choices made by the Legislature. Our role is simply to give meaning to the clearly expressed words in the Tax Sale Law, *N.J.S.A.* 54–1 to –137.

## III.

For the reasons expressed, we reverse the decision of the Appellate Division and reinstate the judgment of the trial court.

*For reversal and reinstatement*—Justices LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—5.

*Opposed*—None.