PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3316
_____

GREGORY BOHUS, ON BEHALF OF THEMSELVES
AND OTHERS SIMILARLY SITUATED;
LARISSA SHELTON, ON BEHALF OF THEMSELVES
AND OTHERS SIMILARLY SITUATED


v.


RESTAURANT.COM, INC.

Gregory Bohus; Larissa Shelton
                                        Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-10-cv-00824)
District Judge:  Honorable Joel A. Pisano
_____

Argued on February 12, 2015

Before:  CHAGARES, JORDAN, and VANASKIE,
            *Circuit Judges*.

(Filed: April 30, 2015)
_____

Katrina Carroll, Esq.
Lite, DePalma, Greenberg
211 West Wacker Dr.
Chicago, IL 60606

Bruce D. Greenberg, Esq.    [ARGUED]
Lite, DePalma, Greenberg
Two Gateway Center, 12th Floor
Newark, NJ 07102

Christopher J. McGinn, Esq.
79 Paterson St.
New Brunswick, NJ 08901

Andrew R. Wolf, Esq.
Henry P. Wolfe, Esq.
The Wolf Law Firm
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ  08902
        *Counsel for Appellants*

Michael R. McDonald, Esq.    [ARGUED]
Caroline E. Oks, Esq.
Damian V. Santomauro, Esq.
Jennifer M. Thibodaux, Esq.
Gibbons
One Gateway Center
Newark, NJ   07102
        *Counsel for Appellee*

2

————————————

OPINION

————————————

JORDAN, *Circuit Judge*.

Larissa Shelton and Gregory Bohus (the "Plaintiffs") appeal from an order of the United States District Court for the District of New Jersey dismissing their putative class action suit against Restaurant.com. A total of five prior opinions have been issued in this case by, variously, the District Court, the Supreme Court of New Jersey, and our Court. *See Shelton v. Restaurant.com* (*Shelton V*), No. CIV.A. 10-824 JAP, 2014 WL 3396505 (D.N.J. July 10, 2014); *Shelton v. Restaurant.com, Inc.* (*Shelton IV*), 543 F. App'x 168 (3d Cir. 2013); *Shelton v. Restaurant.com, Inc.* (*Shelton III*), 70 A.3d 544 (N.J. 2013); *Shelton v. Restaurant.com, Inc.* (*Shelton II*), No. 10-2980, 2011 WL 10844972 (3d Cir. May 17, 2011); *Shelton v. Restaurant.com, Inc.* (*Shelton I*), No. CIV. A 10-0824 (JAP), 2010 WL 2384923 (D.N.J. June 15, 2010). But the end, one may hope, is finally near. We will reverse and remand for entry of judgment solely in favor of the named plaintiffs.

3

## I.    Background[1]

The Plaintiffs purchased gift certificates from Restaurant.com that allegedly violated several New Jersey statutes. Restaurant.com sells gift certificates online that "provide a credit for the holder for purchases of food and beverages at the restaurant named on the certificate." *Shelton IV*, 543 F. App'x at 169. "[T]he amount paid does not always coincide with the face amount of the certificate." *Id.* at 169 n.2. The gift certificate may contain conditions imposed by the restaurant, "such as prohibiting the use of a certificate on weekends or for the purchase of alcoholic beverages." *Shelton III*, 70 A.3d at 547. Substantially all gift certificates issued by Restaurant.com since April 4, 2006 – including the gift certificates purchased by the Plaintiffs – share the following characteristics:

> Each certificate displayed on its face various restaurant-specific conditions in addition to standard terms and conditions imposed by Restaurant.com. Two standard terms and conditions on the … certificates were the following: 1) the certificate "[e]xpires one (1) year from date of issue, except in California and where otherwise provided by law[,]" and 2) the

---

[1] Because we are reviewing the District Court's ruling on a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving parties, the Plaintiffs. *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 604 (3d Cir. 2015).

certificate is "[v]oid to the extent prohibited by law."

*Id.* at 547-48 (alterations in original).

The Plaintiffs filed a purported class action against Restaurant.com in New Jersey state court, and the case was later removed to federal court on the basis of diversity jurisdiction. *Id.* at 548. The class has not been certified. The Plaintiffs' complaint alleges two claims: in Count I, violations of the New Jersey Gift Certificate Statute, N.J. Stat. Ann. § 56:8-110, and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq.*; and, in Count II, violations of the Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA"), *id.* §§ 56:12-14 to 12-18. The New Jersey Gift Certificate Statue prohibits gift certificates from expiring within 24 months of the date of sale, *id.* § 56:8-110(a)(1), and the Consumer Fraud Act provides a cause of action for violations of the Gift Certificate Statute, *id.* §§ 56:8-11, 8-112. The TCCWNA prohibits giving notice to a consumer or offering or entering into any written consumer contract that violates any clearly established consumer right or seller responsibility. *Id.* § 56:12-15. The TCCWNA also provides that any notice or consumer contract that states that any of its provisions are or may be void, unenforceable, or inapplicable in some jurisdictions must also specify "which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey." *Id.* § 56:12-16. The TCCWNA authorizes "the aggrieved consumer" to recover "a civil penalty of not less than $100.00 or … actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs." *Id.* § 56:12-17.

5

The District Court initially granted a motion to dismiss for failure to state a claim. As to the first count, the Court concluded that the Plaintiffs had failed to allege any ascertainable loss, as is required under relevant state law. *Shelton I*, 2010 WL 2384923, at *4. As to the second count, the Court concluded that the Plaintiffs were not consumers within the meaning of the TCCWNA because the gift certificates they purchased were not "money, property or service[s]," N.J. Stat. Ann. § 56:12-15, but provided only "a contingent right to a discount." *Shelton I*, 2010 WL 2384923, at *5. We ultimately affirmed the dismissal of the first count, *Shelton IV*, 543 F. App'x at 169-70, but before resolving Plaintiffs' challenge to the dismissal of the second count, we certified the following questions to the Supreme Court of New Jersey:

> 1. Does the TCCWNA apply to both tangible and intangible property, or is its scope limited to only tangible property?
>
> 2. Does the purchase of a gift certificate, which is issued by a third-party internet vendor, and is contingent, i.e., subject to particular conditions that must be satisfied in order to obtain its face value, qualify as a transaction for "property ... which is primarily for personal, family or household purposes" so as to come within the definition of a "consumer contract" under section 15 of the TCCWNA?

*Shelton II*, 2011 WL 10844972, at *4. The Supreme Court of New Jersey accepted the certification but reformulated the questions as follows:

6

1. Whether Restaurant.com's coupons, which were issued to plaintiffs and redeemable at particular restaurants, constitute "property" under the New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14 to -18;

2. If the coupons constitute "property," whether they are "primarily for personal, family or household purposes," N.J.S.A. 56:12-15; [and]

3. Whether the sale of the coupons by Restaurant.com to plaintiffs constituted a "written consumer contract," or whether the coupons "gave or displayed any written consumer warranty, notice, or sign," under N.J.S.A. 56:12-15.

*Shelton III*, 70 A.3d at 549 (alteration in original).

The New Jersey Supreme Court then determined in a thorough and carefully crafted opinion – *Shelton III* – that the term "property" as used in the TCCWNA encompasses intangible property such as the gift certificates issued by Restaurant.com, *id.* at 554, 558-59, that the gift certificates were primarily for personal, family, or household purposes, *id.* at 555, 558-59, that the sale of the gift certificates constituted a written consumer contract, *id.* at 556, 559, and that the terms listed on the gift certificates constituted notice, *id.* at 558-59. In sum, the court concluded, "The statute as drafted … covers the certificates in question." *Id.* at 559.

7

Next, we vacated the District Court's dismissal of the TCCWNA count and remanded for further proceedings consistent with the New Jersey Supreme Court's explication of the law in *Shelton III*. *Shelton IV*, 543 F. App'x at 171. Upon remand, Restaurant.com again filed a motion to dismiss, arguing that *Shelton III* should apply only prospectively. The District Court agreed. It acknowledged that decisions are ordinarily applied retroactively under New Jersey law. But it concluded that retroactive application was inappropriate here because *Shelton III* established a new rule of law by resolving an issue of first impression, and retroactive application would yield substantial inequitable results. The District Court acknowledged the fact-sensitive nature of its analysis of the equities, but it rejected the Plaintiffs' argument that an evidentiary record was needed to reach a decision. It instead decided that, because the Plaintiffs "have not suffered any actual, non-theoretical damages" (App. at 12) – in fact, there was "no allegation that Plaintiffs were unable to enjoy the bargained-for discounts at the third-party restaurants that they selected" – they should not be entitled to "windfall statutory damages and attorneys' fees." (*Id.* at 13.) In the District Court's view, "common sense" dictated that the many "unsuspecting companies" that would be subject to the new law should be given a chance to change their conduct before being exposed to "extraordinary statutory penalties." (*Id.* at 11.) In such a situation, the District Court concluded, even limited retroactive application to the plaintiffs in this case would be inequitable.

The Plaintiffs timely appealed the District Court's order.

8

## II.    Discussion[2]

The Plaintiffs raise three main arguments challenging the District Court's retroactivity ruling.  First, as a preliminary matter, they argue that the Supreme Court of New Jersey has already conducted a retroactivity analysis and determined that its decision was to apply to the parties in this case, and hence we need not revisit the issue.  Alternatively, they suggest that we certify the question of retroactivity to the Supreme Court of New Jersey.  Second, they argue that the question of retroactivity need not even arise because the rule announced in *Shelton III* is not new.  Finally, they argue that even if the rule announced in *Shelton III* is new, the District Court should have applied the general rule that litigants who bring about a change or clarification in the law are entitled to the benefit of that new rule.  We consider each of those arguments in turn.

### A.    Whether *Shelton III* Addressed Retroactivity

As just noted, the Plaintiffs contend that *Shelton III* already determined the retroactive effect to be accorded that decision, and that, if not, we should certify the issue of

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2)(A); we have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over a dismissal under Rule 12(b)(6).  *Pearson*, 775 F.3d at 601.  When a district court dismisses on the basis of an affirmative defense, as is the case here, we will affirm only when the defense is "apparent on the face of the complaint" and documents relied on in the complaint.  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation marks omitted).

9

retroactivity to the Supreme Court of New Jersey. The Plaintiffs correctly observe that *Shelton III* contains several passages that suggest the Supreme Court of New Jersey was applying its ruling to the parties before it. For example, when it reformulated the questions of law that we certified, it phrased each new question in terms of whether "Restaurant.com's coupons" fell within the relevant statutory terms. *Shelton III*, 70 A.3d at 549. Similarly, it stated that its "task [was] to define 'property' in order to determine whether the certificates offered by Restaurant.com are within the scope of the TCCWNA," *id.* at 550, "whether the certificates offered by Restaurant.com qualify as property 'which is primarily for personal, family or household purposes,'" *id.* at 554, and "whether the coupons or certificates issued by Restaurant.com to plaintiffs are 'written consumer contract[s]' or whether the coupons 'gave or displayed any written consumer warranty, notice or sign,'" *id.* at 555. Although the court concluded its opinion with a generic summary of its legal rulings, *id.* at 558-59, it followed that summary with the following case-specific language:

> Thus, plaintiffs can properly be considered "consumers" within the scope of the TCCWNA because the certificates acquired by them through the Restaurant.com website are property primarily for personal, family, or household purposes. Further, in construing the plain language of the terms of the TCCWNA and the Act's relationship to the Plain Language Act, we conclude the certificates purchased from Restaurant.com can be considered "consumer contracts[,]" and the standard terms

10

provided on the certificates can be considered "notices" subject to the TCCWNA.

*Id.* at 559.  In other words, the court stated, "The statute as drafted … covers the certificates in question."  *Id.*

While *Shelton III* spoke in terms of the TCCWNA's application to Restaurant.com, nothing in that opinion expressly addresses the issue of retroactivity.  None of New Jersey's cases on retroactivity are cited, nor is the test for departing from the general rule of retroactivity mentioned.  Nevertheless, the Plaintiffs argue that, to the extent *Shelton III* is silent as to its retroactive effect, its intent is clear and we should presume that the Supreme Court of New Jersey meant for its interpretation of the TCCWNA to be retroactive.

New Jersey law suggests that any appellate opinion that considers remedial issues in the course of its analysis, or remands for consideration of such issues, ordinarily contemplates retroactive application to the parties in that case.  The Supreme Court of New Jersey adopted that approach when it addressed one of its cases that had been reviewed by the United States Supreme Court:

> Although the [United States] Supreme Court's opinion is silent on the issue of retrospective application, the remand to this Court to determine severability and "for further proceedings" carries with it the implicit direction that we determine the relief appropriate to the holding that the [legislation at issue] is partially pre-empted.  If the Court conceived that its decision might apply only

11

prospectively, which would significantly affect the remedy we must fashion, it is reasonable to assume that the opinion would at least have adverted to that possibility.

*Exxon Corp. v. Hunt*, 534 A.2d 1, 7 (N.J. 1987).

In the Plaintiffs' view, that reasoning should guide us here. But it cannot. That reasoning is sound when applicable, but it is plainly not applicable in the context of an opinion given on certification. The Supreme Court of New Jersey was not called upon to directly fashion a remedy or resolve the Plaintiffs' case. Nor did it sit as an appellate tribunal reviewing a decision of the federal courts and remanding for a determination of the appropriate remedy. *See Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 101 (1807) (Marshall, C.J.) (defining appellate jurisdiction as "the revision of a decision of an inferior court"); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175 (1803) (Marshall, C.J.) ("It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted … ."). As the New Jersey Supreme Court itself put it in *Delta Funding Corp. v. Harris*, "[t]he purpose of the certification process is to answer the question of law submitted pursuant to [New Jersey Rule of Court] 2:12A, not to resolve … factual differences." 912 A.2d 104, 108 (N.J. 2006). In *Delta Funding*, the court addressed how the facts of that case interacted with the legal principles governing arbitration agreements, *id.* at 111-12, but it clarified that it did so in furtherance of its effort to "identify general principles of New Jersey contract law that the Third Circuit and the arbitrator can then apply to the agreement." *Id.* at 110.

12

Certified questions should be such as to "control the outcome of a case pending in the federal court." L.A.R. 110.1; *see also* N.J. R. 2:12A-1 (providing that the Supreme Court of New Jersey has authority to accept a certified question from our court "if the answer may be determinative of an issue in litigation pending in the Third Circuit"). But there is a distinction between deciding a controlling legal issue and resolving a dispute. In answering the certified question, the Supreme Court of New Jersey was not applying the law to the facts of this case in the sense that it was resolving a dispute among litigants. That can only be done by a court with jurisdiction over the dispute itself, and jurisdiction, coupled with the mutual respect inherent in the seeking and granting of certification of a controlling question of law, circumscribes the opinion rendered. The Supreme Court of Utah has insightfully provided a state-court perspective on the process:

> We routinely refer to surrounding facts and circumstances not just to set the stage for our resolution of questions certified by federal courts, but also to illustrate the application of our answer in the context of the case.

> That is not to say that our opinion on certification will itself resolve the underlying federal case. The resolution of the parties' competing claims and arguments will be up to the federal courts, which of course retain jurisdiction to decide this case under the law as they see it. … Those courts retain the independent authority to decide whether and to

13

> what extent to apply our law or to recognize limitations on or caveats to it.

*Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 289 P.3d 502, 505-06 (Utah 2012) (Lee, J.) (footnote and paragraph numbering omitted)); *cf. Nemours Found. v. Manganaro Corp.*, 878 F.2d 98, 101 (3d Cir. 1989) (stating that an order of the district court certifying a question to the Delaware Supreme Court "does not mean the effective end of the federal litigation. Further proceedings, including possibly a trial on the merits, will be held in the district court after the Delaware Supreme Court either answers the certified questions or declines to accept them."). Thus, despite the Plaintiffs' insistence to the contrary, *Shelton III* could not and did not adjudicate the question of retroactivity, and we doubt that the New Jersey Supreme Court intended any such thing.

We also doubt the wisdom of returning to that court with the question of retroactivity. We have already imposed upon it once in this case, and it graciously answered our call for help in clarifying the scope of the TCCWNA. We are no longer faced with a "[n]ovel, unsettled question[] of state law," which is a prerequisite for certification. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997). Certification would be inappropriate here – indeed, it would serve no purpose – because the requirements of New Jersey law on the issue of retroactivity are clear. All that remains is to apply them to the acknowledged facts. It appears that, in essence, the Plaintiffs are attempting to escape the effect of the removal of their case to federal court and would like to have the Supreme Court of New Jersey adjudicate the matter. They chose a state forum in the first instance, so their efforts

14

are perhaps understandable, but we are not free to shirk our responsibility to decide what is properly before us.

### B.     New Rule

The Plaintiffs next challenge the District Court's determination that *Shelton III* established a new rule of law. They argue that there was no old rule from which the court could have departed; rather, the law was silent on the issue, which, they say, prevents *Shelton III* from constituting a "new" rule.

There is a ringing lack of logic in that assertion. Things are commonly understood as "new" not only when contrasted with something "old" but when they are, in themselves, without precedent. Thus, while it is true that, "[u]nless a new rule of law is at issue, the Court need not engage in retroactivity analysis," *US Bank Nat'l Ass'n v. Guillaume*, 38 A.3d 570, 585 n.3 (N.J. 2012), it is not true that a "new rule" only arises when it supplants an old one. An opinion establishes a "new" rule "'*either* by overruling clear past precedent on which litigants may have relied, … *or* by deciding an issue of first impression whose resolution was not clearly foreshadowed.'" *Coons v. Am. Honda Motor Co.* ("*Coons II*"),[3] 476 A.2d 763, 768 (N.J. 1984) (omission in original; emphasis added) (quoting *Chevron Oil Co. v. Huson*,

---

[3] *Coons II* involved a rehearing of *Coons v. American Honda Motor Co.* ("*Coons I*"), 463 A.2d 921 (N.J. 1983), to revisit the retroactivity ruling of that earlier opinion. Because New Jersey case law consistently uses the appellation "*Coons II*" to refer to the later opinion, regardless of whether *Coons I* has been discussed, we do the same.

15

404 U.S. 97, 106 (1971)); *accord In re Contest of Nov. 8, 2011 Gen. Election of Office of N.J. Gen. Assembly*, 40 A.3d 684, 707 (N.J. 2012). "Generally, an issue of statutory construction that implicates an established practice and that courts have not yet addressed presents an issue of first impression." *Henderson v. Camden Cnty. Mun. Util. Auth.*, 826 A.2d 615, 620 (N.J. 2003).

The New Jersey Supreme Court's decision in *Shelton III* was not foreshadowed by an unambiguous reading of the text of the statute or by other state court decisions. As we stated in our certification order, "The panel has examined the decisions of the courts of the State of New Jersey and found no decision that addresses the question of how the term 'property' is defined in the TCCWNA." *Shelton II*, 2011 WL 10844972, at *1. We explained that only one case "addressed the question of whether gift certificates were considered property, and that case did not involve the TCCWNA," nor was there anything in that case from which we could "infer what the Supreme Court of New Jersey would say regarding the question of tangible and intangible property in the context of the TCCWNA." *Shelton II*, 2011 WL 10844972, at *3. Furthermore, we noted that "the Legislature did not expressly omit gift certificates from the types of property covered by the TCCWNA," and determining the import of that silence was complicated by the fact that a separate act, the Gift Certificate Act, "specifically addresses restrictions on gift certificates." *Id.* at *4. Nothing in *Shelton III* contradicts our earlier assessment. Because the rule announced in *Shelton III* was not foreshadowed by the case law or an unambiguous

statute, it qualifies as new.[4]  We must therefore determine whether the District Court properly limited the rule to purely prospective application.

## C.    Equitable Analysis

Under New Jersey law, judicial decisions that adopt new rules are generally given retroactive effect.  *Coons II*, 476 A.2d at 767.  Courts may, however, depart from that general rule when they determine that "retroactive application could produce substantial inequitable results."  *Selective Ins. Co. of Am. v. Rothman*, 34 A.3d 769, 773 (N.J. 2012).  To determine "what is just and consonant with public policy in the particular situation presented," courts generally consider three factors:  "(1) justifiable reliance by the parties and the community as a whole on prior decisions, (2) a determination

---

[4] One case may be read as implying that an issue of first impression is not involved when a court "merely applie[s] existing rules to a new factual variant."  *See Malinowski v. Jacobs*, 915 A.2d 513, 515 (N.J. 2007) (referring to the opinion of the dissenting judge of the intermediate appellate court, and, after discussing that dissenting opinion at length, stating that the court was reversing "substantially for the reasons given by" that dissenting judge).  Taken to an extreme, such a reading might undermine the principle that an unprecedented circumstance can produce an application of law so novel as to be "new" for purposes of retroactivity.  Even under that formulation of the test, however, our conclusion is the same:  given our statements in *Shelton II* and the analysis in *Shelton III*, the Supreme Court of New Jersey was not simply applying settled law to a new factual variant.

17

that the purpose of the new rule will not be advanced by retroactive application, and (3) a potentially adverse effect retrospectivity may have on the administration of justice." *Coons II*, 476 A.2d at 767; *see also In re Contest of Nov. 8, 2011 Gen. Election*, 40 A.3d at 707 (focusing on the purpose and impact of the new rule); *Selective Ins.*, 34 A.3d at 773 (focusing on reasonable reliance). "Depending upon the facts of a case, one of the factors may be pivotal." *Rutherford Educ. Ass'n v. Bd. of Educ. of Borough of Rutherford, Bergen Cnty.*, 489 A.2d 1148, 1156 (N.J. 1985). Once those factors are taken into account, there are four ways to proceed:

> "(1) make the new rule of law purely prospective, applying it only to cases whose operative facts arise after the new rule is announced; (2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigation; (3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review; and, finally, (4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted."

*Coons II*, 476 A.2d at 767 (quoting *State v. Burstein*, 427 A.2d 525, 529 (N.J. 1981)).

The Plaintiffs of course challenge the District Court's ruling that *Shelton III* should be given purely prospective

18

application. They first argue that Restaurant.com did not carry its burden to demonstrate actual, reasonable reliance on an earlier interpretation of the law.  On a related note, they say that, because there was no record developed to support the conclusion that it would be inequitable to apply the new rule retroactively, it was error for the District Court to refuse retroactive effect.  The Plaintiffs next contend that the District Court erred by not applying the general rule that parties who successfully push for a clarification of the law are entitled to application of the new law to their case, even when full retroactivity is inappropriate.  They argue that the District Court's reasoning for departing from the general rule – namely, that application to the Plaintiffs would result in a "windfall" because Restaurant.com may have to pay statutory damages and attorney fees when there were no actual damages – was insufficient as a matter of law.  While the first of those arguments – the one focused on reasonable reliance – is not persuasive, the second – concerning the propriety of statutory damages – is.

### 1.  *Reasonable Reliance*

New Jersey precedent calls on courts to consider the impact that retroactive application of a new rule would have on those who have reasonably relied on a contrary interpretation of the law.  *See SASCO 1997 NI, LLC v. Zudkewich*, 767 A.2d 469, 477 (N.J. 2001) (considering the financial impact of a new rule on "the entire commercial lending industry" when the new rule invalidated "a practice apparently dominant throughout the industry"); *Rutherford Educ. Ass'n*, 489 A.2d at 1159 (noting that retroactive application "may have serious consequences on the tax structure of many communities and other community

19

services"). Reliance on a contrary interpretation of the law is reasonable "when a court renders a first-instance or clarifying decision in a murky or uncertain area of the law." *Montells*, 627 A.2d at 662 (internal quotation marks omitted). "[A] party seeking to avoid retrospective application of a decision must show actual reliance on a contrary principle of law." *New Jersey Election Law Enforcement Comm'n v. Citizens to Make Mayor-Council Gov't Work*, 526 A.2d 1069, 1074 (N.J. 1987) (emphasis omitted).

The quantum of evidence required to show actual reliance depends on the nature of the inquiry in each case. *Compare Selective Ins.*, 34 A.3d at 773-74 (noting that the record was "largely devoid of evidence" that "might imply that there was general reliance on the interpretation of the statute and regulations that we have found wanting" or that "anyone other than this defendant found the law in this regard to be 'murky' or so uncertain that a retroactive application of our judgment would be manifestly unjust"), *with Rutherford Educ. Ass'n*, 489 A.2d at 1159 (noting that the court had examined the record, and that there was "no question that in this case the school boards acted properly and in good faith in relying on prior law," but also assuming that boards of education in general acted similarly). In appropriate cases, "[s]ome level of generality" may be required, and common sense inferences may be drawn to determine whether a practice is widespread or whether defendants relied on a contrary interpretation of the law. *Coons II*, 476 A.2d at 772. For example, in a case involving a statute of limitations tolling provision that had been struck down, the Supreme Court of New Jersey noted that, "given the nature of th[e] statute" in question, one would be "justified in presuming" that many plaintiffs had not brought challenges under the

belief that the pertinent statute of limitations had been tolled. *Id.*

The District Court in this case did not err by presuming that businesses similarly situated to Restaurant.com had been operating with the understanding that the TCCWNA did not apply to intangible property. Under *Shelton III*'s interpretation of the TCCWNA, businesses may not sell gift certificates and other intangible property intended for household use if they indicate that certain provisions – such as expiration dates – "may be void, unenforceable, or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey." N.J. Stat. Ann. § 56:12-16; *Shelton III*, 70 A.3d at 558-59. The District Court determined that reliance on competing interpretations of the TCCWNA was reasonable. It had initially ruled that, because the gift certificates in question were simply "a contingent right to a discount," *Shelton I*, 2010 WL 2384923, at *5, the Plaintiffs were not consumers within the meaning of the TCCWNA. Although ultimately incorrect, that interpretation was reasonable. It is safe to assume, without more specific proof, that many internet retailers selling intangible property intended for household use would likewise have considered the requirements of the TCCWNA and concluded that gift certificates and other intangible property qualify as contingent rights rather than "property" under that statute.

Furthermore, the District Court correctly determined that the impact of a fully retroactive application of *Shelton III* would be widespread. *Shelton III* has the potential to affect not only Restaurant.com, but also any business – including

21

internet retailers located in any part of the world – that markets intangible property to consumers in New Jersey. Specific proof of the extent of *Shelton III*'s impact was not necessary here, since common sense reveals that its impact will be truly far-reaching. The District Court thus correctly refused to apply the general rule of full retroactivity.

### 2. *Propriety of Statutory Damages for the Named Plaintiffs*

Even though full retroactivity is not appropriate here, it does not follow that the new rule should be applied purely prospectively. Instead, New Jersey courts generally apply a new rule at least to the litigants whose efforts helped produce it. The Supreme Court of New Jersey has explained that,

> [b]alanced against [the factors of reasonable reliance, the purpose of the rule, and the rule's impact] is our belief that those responsible for effecting a change in the law should benefit from their efforts. Accordingly, we have recognized that purely prospective rulings fail to reward litigants for their efforts and fail to further the broader goal of providing an inducement to challenge existing interpretations of the law. It has long been our position that fundamental fairness generally requires that champions of the cause should be rewarded for their effort and expense in challenging existing law.

*Rutherford Educ. Ass'n*, 489 A.2d at 1158; *accord James v. Bd. of Trustees of Pub. Emps.' Ret. Sys.*, 753 A.2d 1061, 1072

22

(N.J. 2000); *Kibble v. Weeks Dredging & Const. Co.*, 735 A.2d 1142, 1150-51 (N.J. 1999). For example, in *Henderson v. Camden County Municipal Utility Authority*, the court determined in a putative class action that a new rule prohibiting utilities from charging compound interest should not be given full retroactive effect because charging compound interest was a widespread, long-standing, established practice. 826 A.2d at 620. Nevertheless, the court decided that, even though the class would not receive the benefit of the new rule, the named plaintiff would, "because of her efforts in litigating [the] appeal." *Id.* at 621.

Here, the District Court rejected that approach. It decided that, because the Plaintiffs had suffered no "ascertainable loss" and there had been reasonable reliance on a contrary interpretation of the law, it would be unjust for Restaurant.com to have to pay "windfall statutory damages and attorneys' fees." (App. at 13.) The Court quite rightly was concerned with whether the purpose of the new rule would be best served by something less than full retroactive effect. *Coons II*, 476 A.2d at 767. But the Court's emphasis on what it deemed the "windfall" nature of the Plaintiffs' recovery was misplaced. As explained in *Shelton III*, "the TCCWNA is a remedial statute, entitled to a broad interpretation to facilitate its stated purpose," 70 A.3d at 558, and the New Jersey legislature decided to impose a civil penalty as a "deterrent," *id.*, to effectuate that purpose – "to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts," *id.* at 549 (quoting *Kent Motor Cars, Inc. v. Reynolds & Reynolds Co.*, 25 A.3d 1027, 1044 (N.J. 2011)). We cannot disregard the legislature's choice to award statutory damages in the absence of actual damages. *See*

23

*Tigner v. Texas*, 310 U.S. 141, 148 (1940) ("How to effectuate policy – the adaptation of means to legitimately sought ends – is one of the most intractable of legislative problems. Whether proscribed conduct is to be deterred by qui tam action or triple damages or injunction, or by criminal prosecution, or merely by defense to actions in contract, or by some, or all, of these remedies in combination, is a matter within the legislature's range of choice."). If it is a windfall, it is one purposefully and lawfully provided. It is true that New Jersey law indicates there may be cases where a defendant's reliance interests and other equities are such that a new rule should be applied purely prospectively. *See Tax Auth., Inc. v. Jackson Hewitt, Inc.*, 898 A.2d 512, 522-23 (N.J. 2006) (applying new rule prospectively, with the result that a settlement agreement that plaintiff was trying to void was enforced). But whatever those circumstances may be, this is not such a case.

That does not mean, however, that the District Court could not limit the extent of the windfall. The approach taken by the New Jersey Supreme Court in *Henderson* is instructive. Retroactive application was limited to the named plaintiffs, and that option is available here. By following that approach, the otherwise significant financial impact on Restaurant.com and other potential defendants would be more limited and change the calculus of the equities.

**III.  Conclusion**

Although the District Court correctly determined that the new rule announced in *Shelton III* is not fully retroactive, it erred by failing to apply that new rule to the Plaintiffs, Shelton and Bohus. We will therefore reverse the judgment

24

and remand the case for entry of an order giving the two named plaintiffs the benefit of the new rule of law that their efforts helped to create.