NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1933
_____

SHANNON L. ENSEY, Individually on Behalf of
Herself and All Others Similarly Situated,
Appellant

v.

GOVERNMENT EMPLOYERS INSURANCE COMPANY;
GEICO CASUALTY INSURANCE COMPANY;
GEICO INDEMNITY COMPANY;
GEICO GENERAL INSURANCE COMPANY;
JOHN DOES (1-300)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-12-cv-07669)
District Judge: Honorable Joseph E. Irenas
_____

Submitted Pursuant to L.A.R. 34.1(a)
January 11, 2016

Before: McKEE, *Chief Judge*, AMBRO, and SCIRICA, *Circuit Judges*

(Opinion Filed: October 31, 2016)
_____

OPINION*[1]
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Judge McKee was Chief Judge at the time this appeal was submitted. Judge McKee completed his term as Chief Judge on September 30, 2016.

McKEE, *Chief Judge*.

Shannon Ensey appeals the District Court Order's granting Government Employers Insurance Company's ("GEICO") motion to dismiss five of Ensey's claims for: (1) breach of statutory duty under N.J.S.A. 17:22A-29; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of contract; (4) violation of New Jersey's Consumer Fraud Act ("CFA"); and (5) violation of New Jersey's Truth in Consumer Contract, Warranty, and Notice Act ("TCCWNA"). Ensey also appeals the grant of summary judgment in favor of GEICO on Ensey's last remaining cause of action – breach of statutory duty under N.J.S.A. 17:28-1.1, 17:28-1.9, 39:6A-23, and N.J.A.C. 11:3-15.7. For the reasons provided below, we will affirm.

## I. Factual and Procedural Background

We exercise plenary review over the District Court's dismissal under Rule 12(b)(6).[1] In reviewing a Rule 12(b)(6) dismissal, "we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[2] However, "a plaintiff's obligation to provide the 'grounds' of her 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do."[3]

---

[1] *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 242 (3d Cir. 2015).
[2] *Wyndham Worldwide Corp.*, 799 F.3d at 242–43 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).
[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965–66, 167 L.Ed.2d 929 (2007) (alteration in original) (internal citations omitted).

We also exercise plenary review over the District Court's grant of summary judgment.[4] Summary judgment is appropriate where—construing all evidence in the light most favorable to the nonmoving party—"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'"[6]

## II. Discussion

### A. District Court's grant of GEICO's Motion to Dismiss

### 1. Violation of New Jersey's Consumer Fraud Act (CFA)

To state a claim under the New Jersey Consumer Fraud Act, a plaintiff must allege that: (1) "the defendant engaged in an unlawful practice," (2) she suffered "an ascertainable loss," and (3) the defendant's unlawful practice caused her ascertainable loss.[7] Here, Ensey fails to allege sufficient facts to establish that GEICO acted unlawfully and thereby fails to satisfy the first element.

Ensey alleges that GEICO engaged in an unlawful practice by: (i) failing to inform her of her option to increase her UM/UIM coverage limits to match her BIL coverage limits when she called GEICO in January of 2008, in alleged violation of N.J.S.A. 17:28-

---

[4] *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015).

[5] FED. R. CIV. P. 56(a); *see also Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015).

[6] *Santini*, 795 F.3d at 416 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *See Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17–23 (1994)); *see also Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009).

3

1.1(a)-(b); (ii) failing to send Ensey a buyer's guide and coverage selection form after she increased her BIL coverage limits in January 2008, in alleged violation of N.J.S.A. 39:6A-23(a)-(c); and (iii) allowing an unlicensed GEICO agent to increase her BIL coverage limits in January 2008, in alleged violation of N.J.S.A. 17:22A-29.

Ensey's allegation that GEICO failed to inform her of her option to increase her UM/UIM coverage limits to match her BIL coverage limits when she called to update her existing policy in January 2008 does not amount to an allegation of unlawful activity. Under N.J.S.A. 17:28-1.1(a), "no motor vehicle liability policy or renewal of such policy of insurance . . . shall be issued . . . unless it includes coverage in limits for bodily injury or death" as outlined within its subsections. Under subsection (b),

> [u]ninsured and underinsured motorist coverage shall be provided as an option by an insurer to the named insured electing a standard automobile insurance policy . . . except that the limits for uninsured and underinsured motorist coverage shall not exceed the insured's motor vehicle liability policy limits for bodily injury and property damage, respectively.

Ensey called GEICO in January 2008 to update her existing policy, not to obtain a new or renewal policy. Accordingly, GEICO had no obligation to offer her additional UM/UIM coverage.[8]

Ensey also does not sufficiently allege unlawful action in claiming that GEICO failed to send Ensey a buyer's guide and coverage selection form after she increased her BIL coverage limits in January 2008. Under N.J.S.A. 39:6A-23(a)-(c), only new policies and notices of renewals to existing policies must be accompanied by a buyer's guide and

---

[8] *See* N.J.S.A. 17:28-1.1(a), (b).

4

coverage selection form.[9] In January 2008, Ensey was not issued a new policy or a notice of renewal. Accordingly, GEICO was under no obligation to send her a buyer's guide and coverage selection form.

Finally, Ensey does not allege unlawful conduct in claiming that an unlicensed agent increased her BIL coverage limits and added a new vehicle onto her policy in January 2008 over the phone. Ensey is correct that under N.J.S.A. 17:22A-29, "[a] person shall not sell, solicit or negotiate insurance in this State unless the person is licensed for that line of authority." However, N.J.A.C. 11:17A-1.5 expressly provides that "[o]ffice employees who perform strictly clerical duties under the supervision and control of an insurer or licensed producer shall not be required to be licensed as an insurance producer." N.J.A.C. 11:17A-1.2(9) defines "clerical duties" as including "[r]eceiving and recording an insured's request concerning any additions or deletions to an existing policy and preparing the appropriate endorsements or processing the appropriate changes through an automated system." Additionally, the New Jersey Administrative Code specifically states that unlicensed persons' duties may include:

> Receiving and recording an insured's request concerning any additions or deletions to an existing policy and preparing the appropriate endorsements or processing the appropriate changes through an automated system developed and maintained under the supervision of an insurer or licensed

---

[9] *See* N.J.S.A. 39:6A-23(a) ("No new automobile insurance policy shall be issued . . . unless the application for the policy is accompanied by a written notice identifying and containing a buyer's guide and coverage selection form."); N.J.S.A. 39:6A-23(c) ("Any notice of renewal of an automobile insurance policy . . . shall be accompanied by a written notice of all policy coverage information required to be provided under subsection a. of this section.").

insurance producer and notifying the insurance producer of the endorsements or changes[10]

In January 2008, Ensey contacted GEICO to change her existing policy. Thus, pursuant to N.J.A.C. 11:17A-1.2(9), the GEICO agent, did not need a license to process the requested changes in coverage and prepare the appropriate endorsements. The District Court therefore correctly concluded that GEICO did not violate N.J.S.A. 17:22A-29 when an unlicensed agent updated Ensey's existing policy per her request in January of 2008. As GEICO's conduct did not violate any affirmative statutory obligations, the District Court correctly dismissed Ensey's CFA claim. Moreover, N.J.S.A. 17:22-A-29 was enacted as part of the New Jersey Insurance Producer Licensing Act of 2001 ("IPLA"), and does not allow private causes of action.[11]

## 2. Breach of Contract

To establish a breach of contract claim under New Jersey law, a plaintiff must show that: (1) "the parties entered into a valid contract," (2) "the defendant failed to perform his obligations under the contract," and (3) she "sustained damages as a result."[12] Here, Ensey fails to allege the second element altogether – that GEICO failed to perform its obligations under the contract. Instead, Ensey alleges that GEICO violated New Jersey statutory law.[13] As noted by the District Court, she "does not indicate . . .

---

[10] N.J.A.C. 11:17A-1.2(9).
[11] *See Castro v. Sovran Self Storage, Inc.*, 114 F. Supp. 3d 204, 220 (D.N.J. 2015); *Lemelledo v. Beneficial Management Corp. of America*, 696 A.2d 546, 555 (N.J. 1997).
[12] *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007).
[13] *See* App. at 96–97.

how such conduct violated the terms of her policy."[14] Accordingly, the District Court correctly dismissed Ensey's breach of contract claim. We will address the District Court's grant of summary judgment to GEICO with respect to Ensey's reformation claim, below.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing

Ensey alleges that GEICO breached the implied covenant of good faith and fair dealing in four ways: (i) when it "failed to offer insureds . . . the option of higher available UM/UIM coverage limits when insureds increased their BIL coverage limits," (ii) when it used "unlicensed agents to sell such increased BIL coverage limits so the agents would be unaware of their obligation to so advise insureds," (iii) when it failed "to provide CSFs and Buyer's guides after insureds purchased increased liability limits," and (iv) when it denied "UM/UIM claims thereafter based on the reduced limits purportedly 'chosen by the insureds.'"[15] Ensey is correct in asserting that "every contract in New Jersey contains an implied covenant of good faith and fair dealing,"[16] However, that does not rescue her complaint. To demonstrate that GEICO breached the covenant Ensey must show that GEICO either "act[ed] in bad faith or engage[d] in some other form of inequitable conduct in the performance of a contractual obligation."[17] The covenant

---

[14] *Ensey v. Government Employers Ins. Co*, 2013 WL 5963113, at *6 (D.N.J. Nov. 7, 2013).

[15] Appellant's Brief at 34.

[16] *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) (quoting *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997)).

[17] *Id.*

requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."[18]

We recognize that the covenant is "an independent duty and may be breached even where there is no breach of the contract's express terms,"[19] but Ensey fails to allege with sufficient particularity how GEICO "fail[ed] to act in good faith by offering UM/UIM coverage limits up to the increased BIL coverage limits."[20] Ensey also fails to sufficiently allege how GEICO engaged in "inequitable conduct in the performance of [their] contractual obligation" to her. For example, it is undisputed that GEICO tendered $10,000 to reach Ensey's UIM coverage limit of $25,000 under her existing GEICO policy.[21] The District Court thus correctly dismissed Ensey's claim under the implied covenant of good faith and fair dealing.[22]

### 4. Violation of New Jersey's Truth in Consumer Contract, Warranty and Notice Act

The New Jersey Truth in Consumer Contract, Warranty, and Notice Act ("TCCWNA") provides in relevant part that

> [n]o seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established

---

[18] *Id.* (quoting *Sons of Thunder*, 690 A.2d at 587).

[19] *Id.* (quoting *Emerson Radio Cop. v. Orion Sales, Inc.*, 80 F. Supp. 2d 307, 311 (D.N.J. 2000)).

[20] Appellant's Brief at 35.

[21] *See* App. at 894.

[22] *See Black Horse Lane Assoc., L.P.*, 228 F.3d at 288.

by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.[23]

To prevail on her TCCWNA claim, Ensey must allege that GEICO included a provision in its contract that violates state or federal law.[24] Ensey submits that she has "adequately plead[ed] a violation of the TCCWNA through [Geico's] failure to comply with its statutorily mandated duty to (1) offer matching UM/UIM limits; and (2) utilize licensed agents in the sale of increased limits of insurance."[25] But as discussed above with respect to Ensey's CFA claim, Ensey fails to allege that GEICO violated either N.J.S.A. 17:28-1.1(a)-(b) or N.J.S.A. 17:22A-29. We therefore conclude that District Court correctly dismissed Ensey's TCCWNA claim.

### B. District Court's grant of GEICO's Motion for Summary Judgment

Ensey argues on appeal that GEICO's

> obligation to offer higher UM/UIM coverage limits, and its failure to provide a CSF and a Buyer's Guide, as well as [GEICO's] failure to obtain a signed CSF all constitute breaches of [GEICO's] statutory duties and mandate reformation of [Ensey's] policy of insurance to include UM/UIM coverage limits up to the increased BIL coverage limits.[26]

However, even after construing all evidence in the light most favorable to Ensey, it is clear that GEICO did not breach any of its statutory duties. Moreover, as explained by the

---

[23] N.J. STAT. ANN. § 56:12-15 (West 2015).
[24] *See Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 930 (3d Cir. 2015) (stating that the TCCWNA's purpose is "to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms of warranties in consumer contracts" (quoting *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 559 (N.J. 2013))).
[25] Appellant's Brief at 36.
[26] Appellant's Brief at 39.

District Court, even if GEICO breached a statutory duty, Ensey would not be entitled to reformation.

> N.J.S.A. 17:28-1.9(a) makes clear that an insurance provider shall not be liable

> in an action for damages on account of the election of a given level of motor vehicle insurance coverage by a named insured as long as those limits provide at least the minimum coverage required by law or on account of a named insured not electing to purchase underinsured motorist coverage, collision coverage or comprehensive coverage.

N.J.S.A. 17:28-1.9(b) further explains that the

> coverage selection form required pursuant to . . . [N.J.S.A. 39:6A-23] . . . shall contain an acknowledgement by the named insured that the limits available to him for uninsured motorist coverage and underinsured motorist coverage have been explained to him and a statement that no person, including, but not limited to, an insurer, an insurance producer . . . shall be liable in an action for damages on account of the election of a given level of motor vehicle insurance coverage by a named insured as long as those limits provide at least the minimum coverage required by law or on account of a named insured not electing to purchase underinsured motorist coverage, collision coverage or comprehensive coverage.[27]

Because GEICO satisfied the requirements of N.J.S.A. 17:28-1.9(a)-(b) – and did not act willfully, want only, or in a manner that was grossly negligent – it qualifies for statutory immunity. GEICO provided "at least the minimum coverage" as required under N.J.S.A. 17:28-1.1, and sent a CSF (which met all of N.J.S.A. 17:28-1.9(b)'s requirements) and a Buyer's Guide over a month prior to the effective date of Ensey's automatically renewed

---

[27] We recognize that neither N.J.S.A. 17:28-1.9(a) or N.J.S.A. 17:28-1.9(b) grants immunity to an insurer who acts (either by commission or omission) willfully, wantonly, or grossly negligent.

10

policy.[28] As explained above, GEICO was under no duty to provide either a CSF or a

Buyer's Guide when Ensey called to update her existing policy in January 2008.[29]

Even if GEICO breached a statutory duty, Ensey is not entitled to reformation as a

remedy. Under New Jersey law, "a court will not decree reformation unless it has

convincing evidence that the parties expressed agreement and an intention to be bound in

accordance with the terms that the court is asked to establish and enforce.[30] Accordingly,

reformation is available as a remedy only "when the parties, having reached an agreement

and having then attempted to reduce it to writing, fail to express it correctly in the

writing," and "[i]n addition, the 'mistake must be one that is mutual, material, and not

induced by negligence.'"[31]

Ensey did not express an intention that she wanted her UM/UIM coverage to be

increased to $100,000/$300,000 either when she called to update her existing policy in

January in 2008, or when she received her renewal documents in March 2008. Ensey

admits that she "may have been sent a Declaration page," after she called to change her

policy in January 2008.[32] The Declaration Page expressly stated that Ensey's UM/UIM

---

[28] *See* App. at 905 (although Plaintiff does not recall receiving any forms after her policy renewed, she admits that it was GEICO's "ordinary customer and practice" to send them); *see also* App. at 834–41.

[29] Under N.J.S.A. 39:6A-23(a)-(c), only new policies and notices of renewals to existing policies must be accompanied by a buyer's guide and coverage selection form.

[30] *St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden*, 443 A.2d 1052, 1057 (N.J. 1982) (quoting "Corbin's treatise on Contracts" and explaining that "New Jersey adheres to this rule").

[31] *Id.* at 1066 (quoting *Santamaria v. Shell Eastern Petroleum Products*, 172 A. 339, 341 (N.J. 1934)).

[32] *See* App. at 905.

coverage was $25,000/$50,000.[33] Similarly, the Declaration Page and the Coverage

Selection Form that GEICO sent when her policy renewed automatically stated the

same.[34] The Coverage Selection Form also gave Ensey the opportunity to increase her

UM/UIM coverage.[35]

We agree with the District Court's conclusion that Ensey's "lower than desired

UM/UIM limits resulted from her own negligence rather than [GEICO's] mistake or

fraudulent conduct.[36] The District Court's thus correctly granted summary judgment as to

Ensey's breach of statutory duty and reformation claim.

## IV. Conclusion

For the reasons expressed above, we will affirm the judgment of the District

Court.

---

[33] *See* App. at 817–18, 986–87.
[34] *See* App. at 831–32, 837. We note that Ensey "does not recall receiving" any documents from GEICO after her policy automatically renewed, but admits that it was GEICO's "ordinary custom and practice" to send a Coverage Selection Form as part of its renewal package. *See* App. at 905.]
[35] *See* App. at 837.
[36] *Ensey v. Government Employers Ins. Co.*, 92 F.Supp.3d 253, 264 (D.N.J. 2015).