NEW JERSEY ELECTION LAW ENFORCEMENT COMMISSION, PETITIONER-RESPONDENT, v. ELIZABETH BROWN, ARAXY GOKBERK, AND WILLIAM HARRINGTON, RESPONDENTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued November 18, 1985—Decided December 12, 1985.

Before Judges FURMAN, PETRELLA and ASHBEY.

*Robert J. Hrebek* argued the cause for appellants.

*Cynthia H. Reinhard* argued the cause for respondent (*Farrell, Curtis, Carlin & Davidson*, attorneys; *Edward J. Farrell* and *Cynthia H. Reinhard* on the brief).

The opinion of the court was delivered by

FURMAN, P.J.A.D.

Appeal is brought from a final decision of the New Jersey Election Law Enforcement Commission (ELEC) imposing $50 fines against three successful candidates for reelection to the Asbury Park Board of Education for failure to report campaign contributions exceeding $100 in value, in violation of *N.J.S.A.* 19:44A–16(e). In imposing minimal penalties, ELEC conceded that appellants "were probably unaware" of their reporting obligation, notwithstanding our precedent in *In re John I. Dawes*, 156 *N.J.Super.* 195 (App.Div.1978). We affirm.

ELEC adopted the fact findings and conclusions arrived at by an Administrative Law Judge (ALJ) after a contested hearing. He found as follows. In December 1982 or January 1983 appellants were interviewed and photographed by *The Advisor*, a newsletter published by the Asbury Park Board of Education. Appellants were three of the nine members of the school board, the only three running for reelection and the only three so interviewed and photographed. *The Advisor* was published in March 1983, after the filing deadline for school board candidates and within a month of the school board election. It was circulated to 9,000 homes, by intention every household in Asbury Park. The first page of the March 1983 issue comprised photographs and laudatory, noncritical profiles of the three appellants, nothing about the other six school

board members. Extraneous material filled the two inside pages and the back page.

As the ALJ concluded, the front page coverage of appellants "could not but have aided their reelection efforts." Not only were the candidates' backgrounds and accomplishments presented in glowing terms, so were their future objectives and aspirations. According to their individual profiles, each appellant, drawing upon his or her experience, would strive for such goals as the "finest educational opportunities" to ensure that "every child in the district" reach "fullest potential." Without an express endorsement of appellants, the profiles, under the guise of a nonpartisan newsletter, unmistakeably urged appellants' reelections upon the eligible electorate. As such they were campaign contributions of "other thing of value," *N.J.S.A.* 19:44A–11.

Our *Dawes* opinion is parallel. There a regional utilities authority, of which a candidate for the State Assembly was chairman, circulated a so-called newsletter signed by the candidate which a hearing examiner characterized as "a subtle masterpiece of political propaganda" on behalf of the candidate.

The appeal before us differs factually from *Dawes* in that appellants did not sign the newsletter profiles and were not themselves the executive head of the governmental entity publishing the newsletter, rather one-third only of its membership. We agree with ELEC that, nevertheless, a campaign contribution reporting obligation arose under the circumstance of appellants' participation in the development of their laudatory, noncritical front page coverage in *The Advisor*, in effect acting in concert with the school board, coupled with the timing of publication during the school board election campaign, a timing which was readily foreseeable to appellants upon their interviews and photographs.

■ Appellants raise the additional issue that the coverage on their behalf in the *The Advisor* did not have a fair market value of $100, the reporting minimum because their campaign contributions did not exceed $2000 in the aggregate, *N.J.S.A.*

19:44A–16(e). That argument is specious. Fair market value is the measure of the value of a campaign contribution, *N.J.A.C.* 19:25–11.5. The ALJ reasonably found in accordance with ELEC's expert's evaluation that fair market value was one-fourth of the average of five estimates of printing costs of a four-page newsletter, or $63.83 when divided three ways, and that the mailing cost at the nonprofit postal rate for a newsletter, whether one page or four pages, was $330 when divided three ways.

Finally, appellants attack the constitutionality of *N.J.S.A.* 19:44A–22, the penalty provision of the Campaign Contributions and Expenditures Reporting Act, because it fails to specify a statute of limitations. That argument, too, is specious. Under the circumstances of this appeal, ELEC's complaint was filed within five months of the school board election in which appellants were reelected. Presumptively, in the case of excessive delay and prejudice in the institution of enforcement proceedings, *N.J.S.A.* 19:44A–22 would not be applied so as to be unconstitutional in effect; rather the general statute of limitations in *N.J.S.A.* 2A:14–10, laches or estoppel would be invoked as a bar.

We affirm.