<div style="border:1px solid">

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0999-18T2

STEVEN CALTABIANO and
CHARLES HASSLER,

     Plaintiffs-Respondents,

v.

FRAN GRENIER, in his
capacity as Chairman of the
Salem County Republican
Committee, JESSICA BISHOP,
in her capacity as Treasurer of
the Salem County Republican
Committee and SALEM COUNTY
REPUBLICAN COMMITTEE,

     Defendants-Appellants.

_____

Submitted March 3, 2020 - Decided  September 16, 2020

Before Judges Accurso, Gilson and Rose.

On appeal from the Superior Court of New Jersey,
Chancery Division, Salem County, Docket No.
C-000012-17.

Michael M. Mulligan, attorney for appellants.

Brown & Connery, LLP, attorneys for respondents (William M. Tambussi and Michael J. Miles, on the brief).

PER CURIAM

In this summary action instituted pursuant to N.J.S.A. 19:44A-21, defendants Salem County Republican Committee, its chairman, Fran Grenier, and treasurer, Jessica Bishop, appeal from the entry of a final order of the Chancery Division directing the Committee to return to the Estate of James X. Farish all sums the Committee received from the Reagan Republican Club of Penns Grove and the Reagan Republican Club of Penns Grove James X. Farish Irrevocable Trust, as well as any income derived from those sums, because the contributions to the Penns Grove Club from the Farish Estate exceeded permitted contribution limits. Finding no error, we affirm.

The essential facts are undisputed. James Farish was an officer of the Penns Grove Club, a municipal political party committee. The day before he died in 2004, he executed a one-page will leaving ten percent of his Estate to the Club. In accordance with the will, Farish's executor issued four checks made payable to the Club. The first check in October 2005 was in the sum of $38,656. The next check, in January 2007, was for $82,413. The third check

followed in October 2007, for $36,071. The Estate tendered the final check for $6000 in February 2009.

Frank Santucci, the founder of the Penns Grove Club and its president throughout its existence, was aware of the $7200 annual limit on individual contributions to municipal political party committees, N.J.S.A. 19:44A-11.4(c), and knew that the first three checks from the Farish Estate exceeded those limits. Although the Penns Grove Club made regular filings with the New Jersey Election Law Enforcement Commission (ELEC), none of the Estate's contributions was ever reported.

When Santucci learned of the Farish bequest, shortly after Farish's death, he decided to create a trust to maintain the principal and produce as much income as possible to fund the Club's operations. Santucci testified at deposition that the contribution limits did not factor into his thinking, and "what was in [his] heart and soul was that he wanted to have a sustained income for the republican party." Santucci, who is not a lawyer, and didn't consult with one, drafted the trust instrument, and it was executed by the trustees, Santucci, Mike Wistar, Mike Bercute, Janet Bercute and Gilda Gill, all officers of the Penns Grove Club, shortly after the Estate tendered the first check in October 2005.

 A-0999-18T2

The two-page trust instrument, which variously refers to both the Reagan Republican Club of Penns Grove James X. Farish Irrevocable Trust Fund and "the decedent James X. Farish" as the grantor, and identifies the Reagan Republican Club of Penns Grove as the "Grantee and/or Trustee," provides that "the Grantee/Trustee Executive Committee officers . . . shall hold, manage, invest and reinvest the Trust Estate Fund as necessary to produce and collect an income for the Reagan Republican Club of Penns Grove." The instrument further provides the trustees "can only spend the income from the [t]rust and [could] not spend, devest, borrow from or place a lien against the principal investments." Finally, the instrument provides the "Salem County Republican Organization" would become the successor trustee with all the associated "rights, duties, and benefits" in the event the Club disbanded. Santucci testified during his deposition, that while the Farish trust was "a separate legal entity" from the Club, he and the other trustees, the executive officers of the Club, "had the power to amend" the trust instrument and "control" income distributions from the trust.

The Club invested $150,000 of the Farish bequest, leaving in excess of $7000 in the Club's "holding account" for emergencies, and used the income and dividends to fund the Club's operations and make contributions to

4

republican candidates and committees. In 2017, the Club disbanded. Santucci testified that after he turned eighty-years-old, he'd "had enough" and wanted to "get out to enjoy [his] life," and "didn't want to be arguing or fighting with people" and instead wanted to "make [his] wife's life more peaceful."

The Club reported to ELEC in February 2017 that it terminated operations the prior month, and that its expenditures for the year would not exceed $5500. In late February, defendants Grenier and Bishop opened an account at Pennsville National Bank on behalf of the Salem County Republican Committee to receive the income generated by the Farish trust. Santucci issued three checks to the Committee totaling $13,739.04, which the Committee deposited into the Pennsville account. The Committee opened an investment account for receipt of the invested principal of the Farish bequest and ownership of the account was transferred from the Club to the Committee, which issued a resolution designating Grenier and Bishop as the persons authorized to make decisions and act on behalf of the Committee with respect to the investment account. Grenier and Bishop were also responsible for directing contributions from the income and dividends from the Farish invested funds to republican candidates and committees.

A-0999-18T2

In its second quarter 2017 report to ELEC, the Committee reported contributions of $13,739.04 and $189,042.30 from the Reagan Republican Club of Penns Grove - James X. Farish Irrevocable Trust. The Committee also reported $6,895.65 in dividends, interest and other income from the Farish trust. Noting the unusually large contributions, plaintiff Caltabiano, the chairman of the Salem County Democratic Committee, filed a complaint with ELEC requesting an immediate investigation into the contribution and the conduct of the Committee, Grenier and Bishop.

Bishop wrote to ELEC advising that she and Grenier had been made trustees of the Farish trust and associated accounts, and that the trust was a separate and distinct legal entity from the Committee, representations she and Grenier have since conceded were not true or correct. Both now admit the Farish trust is owned and controlled by the Committee, through them. Based on advice Bishop claims to have received from ELEC in response to her letter, the Committee amended its second quarter report to remove all references to the contribution from the Club and the Farish trust.

The amended filing prompted a second complaint to ELEC by Caltabiano, noting the removal of the "illegal campaign contributions" previously complained of without any explanation and repeating his call for an

A-0999-18T2

immediate investigation. A week later, Caltabiano and Charles Hassler, a candidate for Salem County freeholder, filed this action for declaratory and injunctive relief pursuant to N.J.S.A. 19:44A-22.1, alleging the facts recounted above, and asserting that defendants used the club as a conduit to funnel $189,042.30 in illegal contributions to the Republican County Committee.

Plaintiffs further alleged the Committee made expenditures benefiting Grenier's campaign for the New Jersey Senate after its receipt of the Farish funds from the Club, and that the Farish contribution had been used in opposition to plaintiff Hassler's candidacy for Salem county Freeholder. The complaint recounted plaintiffs' two complaints to ELEC, and that ELEC had not acted on either. Plaintiffs asked the court to declare the $198,042.30 contribution violated the New Jersey Campaign Contribution and Expenditure Reporting Act, N.J.S.A. 19:44A-1 to -47; to enjoin defendants from using the contribution and any proceeds and to account for same; and awarding them their attorney's fees.

The court entered an order enjoining defendants from spending any of the challenged funds pending further order of the court, directing them to provide an accounting, and to make a full and accurate report to ELEC. The court also referred the matter to ELEC for "administrative proceedings,"

A-0999-18T2

ordering the injunction would remain in effect and the court would retain jurisdiction pending completion of those proceedings. The Committee thereafter filed a second amended second-quarter report with ELEC re-stating its original reporting of the contributions from the Club and the Farish trust.

Defendants answered the verified complaint, and shortly thereafter moved for summary judgment dismissing the complaint, which motion was denied without prejudice. While that motion was pending, however, counsel for ELEC wrote to the court advising the Commission had reviewed the matter and determined that of the four "alleged contributions," three were made more than ten years before, precluding the Commission from taking any action with respect to them based on the statute of limitations. As to the fourth, while it was made within the ten-year period, it did not qualify as an excessive contribution. Counsel advised the court that "[f]or those reasons, there is no longer any administrative action" pending before ELEC.

In that letter, counsel for ELEC also noted he had reviewed defendants' pending motion for summary judgment and rejected as "not accurate," defendants' argument that contribution limits are unconstitutional. He expressed the Commission's belief that the court could "resolve the issues in this matter without the need to address the constitutionality of contribution

limits under New Jersey's statutes" and respectfully conveyed ELEC's request that the court "abstain from addressing this issue."

Following the end of discovery, the parties cross-moved for summary judgment. Plaintiff argued the action was timely because the first report to ELEC of the existence of these monies was in spring 2017, precluding an earlier challenge. Plaintiffs argued that defendants conceded the contributions from the Farish Estate to the Club were illegal, and that permitting defendants to benefit from them based on the Club's failure to report them to ELEC as required would pervert the election laws and reward misfeasance. Plaintiffs contended the funds were tainted by illegality and should be ordered returned to the Farish Estate, and if that were no longer possible due to the passage of time, that the funds should escheat to the State.

Defendants argued that there was no contribution in 2017, as the Committee simply succeeded to the Club as trustee under the terms of the Farish trust, and that the contributions to the Club after Farish's death constituted, at most, a technical violation of the contribution laws, and were, in any event, time-barred. Defendants emphasized that the Club spent only the trust income, making the expenditures limited ones. They also argued that they were entitled to judgment dismissing the complaint as plaintiffs were

obligated to appeal ELEC's decision that the matter was barred by the statute of limitations to this court, and the trial court lacked jurisdiction over the proceedings. Defendants further argued the matter was time-barred and the individual contribution limits are unconstitutional as applied because it is not reasonable to assume that Farish was attempting to obtain a quid pro quo by a posthumous contribution.

The Chancery judge heard argument and entered summary judgment in favor of plaintiffs. The judge had no hesitation finding she had jurisdiction to decide the matter. She found the contribution limits and the reporting requirements clear, and that plaintiffs could not have been aware earlier than the filing of the Committee's 2017 second quarter report to ELEC of the violation of either, making application of the discovery rule appropriate. The judge found on the undisputed facts that the contributions from the Farish Estate to the Penns Grove Club were improper and exceeded applicable contribution limits. The judge also determined that the "after-the-fact creation of the trust," even if it could theoretically erase the taint of the illegal contributions, did not do so here as appointment of the officers of the club as trustees made clear the two were not separate entities. The judge dismissed defendants' constitutional argument, noting the United States Supreme Court in

10

Citizens United[1] did not disturb the holding of <u>Buckley v. Valeo</u>, 424 U.S. 1, 26-27 (1976), affirming the validity of statutes limiting direct campaign contributions by individuals to candidates and political parties.

Defendants appeal, arguing the Chancery judge erred in determining she had jurisdiction over this controversy; in ignoring ELEC's determination that the claim was barred by the statute of limitations; in concluding the Farish monies constituted an illegal contribution to the Penns Grove Club; and in failing to find New Jersey's Campaign Contribution and Expenditure Reporting Act is unconstitutional as applied because Farish's bequest presented no risk of political corruption or quid pro quo motive. We find no merit in any of defendants' arguments.

We review summary judgment using the same standard that governs the trial court. <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 224 N.J. 189, 199 (2016). As the parties agreed on the material facts for purposes of the motion, our task is limited to determining whether the trial court's ruling on the law was correct. <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

---

[1]  <u>Citizens United v. FEC</u>, 558 U.S. 310 (2010).

A-0999-18T2

There is no question but that "ELEC has primary jurisdiction over excess contribution claims under the Reporting Act." Nordstrom v. Lyon, 424 N.J. Super. 80, 97 (App. Div. 2012). But that jurisdiction is not exclusive. In re Contest of the Democratic Primary Election of June 3, 2003 for Office of Assembly of Thirty-First Legislative Dist., 367 N.J. Super. 261, 285-86 (App. Div. 2004). Here, the court decided the application for preliminary injunctive relief and appropriately transferred the matter to ELEC for its consideration. See id. at 289 (concluding the judge should have transferred the case to ELEC to allow it to exercise its primary jurisdiction).

ELEC reported back to the court that defendants provided complete and accurate reporting of the Farish contribution to the Commission as ordered. More important, counsel reported that ELEC would not assume jurisdiction over plaintiffs' claim that the Farish Estate's contributions violated the Reporting Act, because "[w]ithout addressing the issue of whether or not these [were] contributions," the statute of limitations precluded ELEC "from taking any action with respect to them." The Chancery court only acted after ELEC declined jurisdiction.

There was no error in the Chancery court's assumption of jurisdiction in light of ELEC's determination that it could not do so in light of the time that

12

had passed since the Estate issued checks to the Club. See id. at 289 (observing ELEC's declination of jurisdiction would be a significant factor in a primary jurisdiction analysis weighing in favor of a court's jurisdiction). ELEC itself expressed support for the court doing so by communicating its belief that the court could "resolve the issues in the matter" without deciding the constitutional issue defendants raised.

We also reject defendants' argument that counsel for ELEC's letter to the court constituted final agency action, requiring plaintiffs appeal to this court in the first instance pursuant to Rule 2:2-3(a)(2). Simply stated, a letter to the court by counsel for an agency is plainly not final agency action. See In re CAFRA Permit No. 87-0959-5, 152 N.J. 287, 299 (1997) (describing requirements for final decisions of an agency). Defendants offer no case to the contrary.

Defendants' argument that the Chancery judge erred by "disregarding ELEC's . . . determination and substituting [her] judgment that relevant statutes of limitation did not time bar plaintiffs' claims" requires but brief comment. The Reporting Act does not specify a statute of limitations applicable to claimed contribution limit violations. See N.J. Election Law Enforcement Comm'n v. Brown, 206 N.J. Super. 206, 210 (App. Div. 1985). Although civil

A-0999-18T2

actions by the State must be commenced within ten years of the accrual of the cause of action, N.J.S.A. 2A:14-1.2(a); N.J. Election Law Enforcement Comm'n v. DiVincenzo, 445 N.J. Super. 187, 203 (App. Div. 2016), this action was not commenced by the State.

Counsel for ELEC did not specify the statute of limitations to which he referred in his letter. The parties, likewise, do not specify the statute of limitations they believe applies, both referring only to the "applicable statutes of limitations." Defendants' failure to identify the statute of limitations they maintain controls this action prohibits any meaningful review of their argument that the Chancery judge erred in finding that "that relevant statutes of limitation did not time bar plaintiffs' claims." See Nextel of New York, Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 45 (App. Div. 2003) (noting "[w]here an issue is based on mere conclusory statements by the brief writer, we will not consider it").

The contributions plaintiffs complained of were the Club's 2017 contributions of the Farish funds to the Committee. We are not aware of any statute of limitations that would bar that claim. Plaintiffs' theory in this case was that the 2017 contributions from the Club to the Committee were tainted by the fact that they were grossly in excess of the $7200 annual limit on

individual contributions to municipal political party committees, N.J.S.A. 19:44A-11.4(c), when made: a fact defendants admit.

Because the tainted funds remained clearly identifiable, we have no hesitation in agreeing with the Chancery judge that the Committee's receipt of those funds from a municipal political party committee – a transfer that would not otherwise be subject to any contribution limit, N.J.A.C. 19:25-11.2 – is rendered unlawful by virtue of the Club's receipt of those funds in violation of the Act's contribution limits. Interpreting the Act to permit the Committee's receipt and expenditure of those funds would undermine its "broad remedial purpose." See N.J. Election Law Enforcement Comm'n v. Citizens to Make Mayor-Council Gov't Work, 107 N.J. 380, 392 (1987). Accordingly, we find the judge properly enjoined the Committee's use of the Farish funds, including the identifiable income derived therefrom, and appropriately ordered the Committee to return the funds to the Farish Estate pursuant to N.J.A.C. 19:25-11.8(a).

Defendants' as-applied challenge to the constitutionality of the Reporting Act is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). The United States Supreme Court has repeatedly affirmed the validity of statutes limiting direct campaign contributions by individuals to

candidates and political parties.  See Citizens United, 558 U.S. at 357; McConnell v. FEC, 540 U.S. 93, 144 (2003); Buckley, 424 U.S. at 26-27. Defendants' argument that there could be no quid pro quo corruption because Farish was deceased at the time of the contribution, ignores one of the principal justifications for campaign contribution limits, i.e., preventing the appearance of public corruption.  Buckley, 424 U.S. at 27 ("Of almost equal concern as the danger of actual quid pro quo arrangement is the impact of the appearance of corruption stemming from public awareness of the opportunities for abuse inherent in a regime of large individual financial contributions.").

Because we are satisfied Judge McDonnell appropriately decided this case on the merits after ELEC declined jurisdiction, that her reasoning was sound and her decision in keeping with the broad remedial purposes of the Reporting Act and the State's election laws, we affirm.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16